Leslie Roy James was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." He was sentenced to life imprisonment without parole as a habitual felony offender.
Antonia Pierce testified that he was employed at the Thorne Service Station on Government Street in Mobile, Alabama, during the early morning hours of September 23, 1984. Around 2:30 a.m., the appellant came to the station and asked for a pack of cigarettes. Pierce, who had locked the station door, opened the door and gave the appellant the cigarettes. The appellant then handed Pierce some money and left.
A short while later, the appellant returned to the station and told Pierce he had run out of gasoline and asked for a container for gasoline. Pierce replied that he did not have one but the Texaco station nearby probably had one. The appellant then left and came back with an antifreeze container.
Pierce went out to the pump and put $1.35 worth of gasoline into the container. The appellant handed him a dollar and then pulled a gun and demanded Pierce's money. When Pierce told the appellant he did not have his billfold, the appellant demanded his watch. Pierce also gave the appellant money he used to make change with — which was less than $50.
The appellant told Pierce that he "ought" to shoot him and then left. Pierce then called the police.
Officer Kenneth Adams and Officer McLain of the Mobile Police Department were on patrol during the morning hours of September 23, 1984, when they received a call concerning the robbery at the Thorne Service Station. A short time later while patrolling the area of Davis Avenue and *Page 476 
Government Street, Adams and McLain saw a man (known to McLain as "Duck") trying to sell a gold watch. "Duck" gave the officers the watch and described the person from whom he got the watch, the girl that he was with and the car which he was driving. "Duck" told the officers this person would be at the Rodeway Inn on Michigan Avenue.
The officers went to the Thorne Service Station and Pierce identified the watch as being the one that had been taken from him that morning. The officers then proceeded to the Rodeway Inn. Once they arrived at the parking lot, they saw the appellant get into a car in a bathrobe and then leave. The appellant was stopped and told he was a suspect in a robbery. He was advised of his Miranda rights and then taken to the police station.
At the station, the appellant participated in a line-up and was identified by Pierce. After the line-up, the appellant wrote the following statement.
 " 'I'm Leslie James. I know my right and also this is a true statement. I were drop off on Church Street, so I went with the gun she gave me. I got out on Church Street and walk to the place and got cigarettes and gas, and I pull the gun at the gas station and got the money and ran and jump in the car. Then she took off and we rode back to the hotel and put the gun up and change clothes at the room Joan and I were staying in. Then we went to Davis Avenue. She drove there and back. I don't know where she got the gun from. But no way I should know. But all she did were drove the car and paid for the gun. I done the robbery for —'
". . . .
 " 'to help her get the ring out of pawn and pay for the hotel room. That the reason I done it. To help her.' " (R. 46-47)
Officers Adams and William Lundy then went to room 116 at the Rodeway Inn and knocked on the door. A female named Joan Carron answered the door and let them in. The officers told her they had picked up her friend and wanted to look for the gun. A gun was found in a drawer inside the chest between the beds in the room.
The appellant testified that he did not go to the Thorne Service Station on the morning in question. He denied writing the statement at issue.
 I
During the direct examination of Officer Lundy, the State sought to introduce a warning and consent-to-speak form, which was signed by the appellant (exhibit # 1). On two occasions, defense counsel objected to the introduction of exhibit # 1 and asked to make a showing outside the presence of the jury. Both times, the trial judge denied defense counsel's motion. On the last occasion the trial judge stated he was "not going to excuse the jury at this time," and would allow defense counsel "to make a showing at the next recess." (R. 43)
The prosecutor then asked Lundy numerous questions concerning the voluntariness of the appellant's statement (exhibit # 2). Defense counsel did not object to any questions on this matter or to the admission of the statement into evidence. Further, defense counsel never made a motion to exclude the statement in question.
After Lundy's testimony was concluded, the State rested its case. The following colloquy took place after the jury had been excused for the day.
 "THE COURT: Mr. James, we have sent the sheriff to the Fountain Correctional Facility to pick up this witness, Verdie Lee Harmon, and he should be here this afternoon. If there's anything else you all need, let me know.
 "You had a couple of matters you wanted to address?
 "MR. STAMP: Yes. I wanted to make my motion to exclude what's been marked — I believe it's State's Exhibit Number 1, and I'd like to present Mr. James for the purpose of this motion. I'd like to get his testimony. *Page 477 
 "THE COURT: Can you just make a showing of what it would be?
 "MR. STAMP: Yes, sir. I believe that Mr. James would testify that he did not sign this, and this is not his statement and not his handwriting.
"Is that not right?
 "THE DEFENDANT: That's right. I don't remember signing it, and he —
"MR. MARTINO: You remember signing it?
"THE DEFENDANT: I don't.
 "THE COURT: You know, of course, Mr. Stamp, you have the right to present his testimony in the presence of the jury, but I could not exclude it on my own motion. The officer testified that he did.
"MR. STAMP: Yes, sir.
 "THE COURT: So, it will, obviously, come into evidence. Now, if you wish to put him on the stand, of course, you have the right to do so.
 "MR. STAMP: Yes, sir. I think — I don't think we will.
 "THE COURT: So, I deny your request to call him at this time, for an in-camera hearing. You may call him in the presence of the jury, of course. That's up to you.
"MR. STAMP: Yes, sir. Yes, sir.
 "THE COURT: And I will assume that he would have taken the stand on the hearing on the motion to exclude and testify that he didn't, but I would still have let it go to the jury, for the obvious reason that there's a dispute and he says he doesn't remember it and doesn't —
You don't deny it?
"THE WITNESS: (No audible response.)
 "THE COURT: He doesn't deny signing it. All right. Anything else?
"MR. STAMP: Nothing." (R. 54-55)
The appellant now contends that the trial judge erred by refusing to hold a hearing, outside the presence of the jury, on the voluntariness of his statement, prior to the admission of the statement into evidence.
An accused is entitled to a hearing on the voluntariness of his confession, and the hearing should be conducted outside the presence of the jury if requested. Felder v. State,470 So.2d 1321 (Ala.Cr.App. 1984), aff'd, 470 So.2d 1330 (Ala. 1985).
We do not find reversible error here for two reasons. First, when the State offered exhibit #2, the appellant's statement, into evidence, defense counsel replied that he had "no objection" to the statement. (R. 50) The statement was then admitted into evidence. Thus, since defense counsel failed to object to the admission of the statement into evidence, he waived the appellant's right to have a hearing on the voluntariness vel non of the statement outside the presence of the jury. Felder, supra. Defense counsel's objections referred only to exhibit # 1, the warning and consent-to-speak form signed by the appellant, not exhibit #2, the statement itself.
Secondly, even if the trial judge erred by failing to hold a hearing on the voluntariness of the appellant's statement outside the jury's presence, we hold it was harmless error. During the hearing on defense counsel's motion (which was quoted above), the trial court was apprised of what the appellant's testimony would be if a hearing was held on defense counsel's motion. The trial court, after hearing this information, stated he would still have allowed the appellant's statement to go to the jury. Thus, we find no basis for reversal here.
 II
The appellant's claim that he was not informed of his constitutional rights before he made his statement is not supported by the record. The record clearly indicates the appellant was advised of his Miranda rights on several occasions before he made his statement to the police. (See R. 30-33, 40, 42, 43, 88).
 III
The appellant's challenge to the sufficiency of the evidence is without merit. The appellant was identified by Pierce as the man who pulled a gun on him and *Page 478 
demanded his money and watch on the morning in question. Pierce's watch was later recovered from a man who described this appellant, his car, his companion, and where he was staying.
The appellant was arrested leaving the motel in a bathrobe. A gun was found in the room where the appellant had been staying. The appellant's statement to the police certainly implicated him in the robbery.
Thus, there was sufficient evidence, presented by the State, to support the appellant's conviction.
 IV
Immediately after trial, the State offered evidence of three prior felony convictions of the appellant — a forgery, a robbery, and a grand larceny. Thereafter, the trial judge sentenced the appellant to life imprisonment without parole as a habitual felony offender.
The appellant maintains he was improperly sentenced under the Habitual Felony Offender Act. First, he contends the trial judge incorrectly used the forgery conviction to impose sentence. The appellant asserted at trial, and at sentencing, that his brother had committed the forgery, and had been convicted using the appellant's name. We need not decide whether the trial judge incorrectly used the forgery conviction to impose sentence because, even if we found the trial judge's action constituted error, it was harmless. During the trial, the appellant admitted to three previous felony convictions — a robbery, a grand larceny, and a burglary. (R. 68, 69, 72) Thus, the appellant's admission of these three convictions was proper proof of these convictions and would have been proper to use as a basis for the appellant's sentence under the Habitual Felony Offender Act. Fisher v. State, 453 So.2d 2
(Ala.Cr.App.), cert. denied, 453 So.2d 2 (Ala. 1984).
Secondly, the appellant contends he did not receive proper notice of the State's intention to proceed under the Habitual Felony Offender Act. There was no requirement in this case for prior notice since the appellant admitted three prior convictions at trial. Fisher, supra; Wilson v. State,428 So.2d 197 (Ala.Cr.App. 1983).
Thirdly, the appellant claims that the trial judge incorrectly denied his request for a pre-sentence report. This argument is without merit. The appellant failed to make a written motion for a pre-sentence report, as required by §13A-5-5, Code of Alabama 1975, and Rule 3(a)(2), Ala.R.Crim.P.Temp. Thus, his oral request was insufficient.Smith v. State, 443 So.2d 1347 (Ala.Cr.App. 1983), cert. denied,443 So.2d 1347 (Ala. 1984).
Furthermore, the appellant was not prejudiced by the denial of a pre-sentence report since he admitted to three prior felony convictions, and, thus, the trial court had no discretion in imposing sentence. Dutton v. State, 434 So.2d 853
(Ala.Cr.App. 1983).
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.