Jerome Maurice Brundage was convicted of assault in the second degree, a violation of Ala. Code 1975, § 13A-6-21. He was sentenced to 10 years' imprisonment and was fined $5000. He was also ordered to pay restitution in the amount of $364.95 and a victim compensation assessment of $100. On this appeal from that conviction, he raises three issues.
 I
The appellant claims that the method by which his jury was selected denied him the equal protection of the law guaranteed by the Fourteenth Amendment, as interpreted in Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). This issue has not been preserved for review.
At trial, the appellant argued that the "jury panel [of 24, which included only one black person] from which to select is [not an] accurate representation of the black percentage of population in Lee County, which . . . is approximately thirty percent." This is a Sixth Amendment fair cross-section claim, not a Fourteenth Amendment equal protection claim. SeeHolland v. Illinois, 493 U.S. 474, 110 S.Ct. 803,107 L.Ed.2d 905 (1990). Batson does not apply to Sixth Amendment claims.Id.
Furthermore, in order to establish a Sixth Amendment violation, the appellant had the burden of proving a systematic exclusion of blacks resulting in their under-representation on the jury rolls. See Duren v. Missouri, 439 U.S. 357,99 S.Ct. 664, 58 L.Ed.2d 579 (1979); Robinson v. State, 560 So.2d 1130,1132 (Ala.Cr.App. 1989). The appellant presented no evidence supporting any such exclusion. He presented evidence only that of the original venire of 53 persons, four black persons were selected for the trial of another case. On the record before us, he has demonstrated no violation of the fair cross-section requirement. See Childs v. State, 574 So.2d 1023 (Ala.Cr.App. 1990); White v. State, 587 So.2d 1218 (Ala.Cr.App. 1990).
 II
The victim of the assault in this case was Marshall H. Foster, Sr., a security guard at the A P grocery store in Auburn. On cross-examination of Foster, defense counsel inquired whether, on the night in question, Foster called the appellant a "nigger" and told him to get out of the store. Foster replied, "No, sir, I have never spoken like that to a customer."
During the presentation of the defense's case, the appellant offered to prove that Foster had verbally abused other customers. He sought to introduce numerous "petitions," purportedly signed by others who, while shopping at the A P, had been "followed, harassed, [or] stereotyped" by Foster. The appellant also offered the testimony of his mother, Evette Brundage, that at some unspecified time before the incident giving rise to this prosecution, Foster had told her to "get out of [his] goddamn store." The trial court ruled the offer of proof inadmissible, agreeing with the prosecutor's argument that such testimony would constitute "impeachment on a collateral matter."
We agree that the evidence of Foster's verbal abuse of others was inadmissible *Page 240 
for the purpose stated. The general rule is that a witness may not be impeached on a collateral matter. 3A Wigmore on Evidence
§ 1003 (Chadbourn rev. 1970); C. Gamble, McElroy's AlabamaEvidence § 156.01(1) (3d ed. 1977). A fact is "collateral" if it is "admissible neither upon an issue under the pleadings of the case nor for the purpose of impeaching the witness' credibility in some means other than inconsistency." McElroy's
§ 156.01(3). Wigmore states the test as follows: "Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" 3A Wigmore § 1003 (emphasis omitted).
Under the facts of this case, the issue is: could the appellant have presented evidence that Foster verbally abused other A P customers independently of Foster's denial? The answer to that question is no. Foster's treatment of other customers was simply irrelevant to the issues in this case. The question of whether Foster was abusive to other customers, while reflecting on his "general credit" as a witness, was too remote and incidental to the issues of this case to be the subject of independent proof. See Noble v. State, 253 Ala. 519,45 So.2d 857 (1950) (in prosecution for carnal knowledge of a girl under 12, accused's conduct with married woman was immaterial; trial court erred by allowing prosecution to contradict testimony of married woman that accused never tried to force sexual relations on her). In that case, the Alabama Supreme Court observed:
 "To affect the general credit of the witness the contradictory statements must relate to matter which is material to the issue on trial and not to those incidental or collateral facts which are remote in their application to the offense on trial and which would improperly extend the issues or involve the trial of other offenses which have no legitimate bearing on the particular offense under investigation.
 "But there is an exception to this rule, that if it has relation to the credibility of the witness in the particular case it is admissible, although it be in respect to collateral or immaterial matter."
Noble, 253 Ala. at 521-22, 45 So.2d at 859 (emphasis in original) (citations omitted).
Had the appellant sought to contradict Foster's denial of calling him a "nigger" by offering to prove that on other occasions Foster directed racial epithets towards other black
customers, we think the evidence would have been admissible independently of the contradiction because such evidence would have affected his credibility as a witness in this "particular case" by showing racial bias. See generally 3A Wigmore §§ 948-49. However, the appellant's offers of proof contained no racial slurs, and defense counsel specifically stated that he was offering the evidence to contradict Foster's testimony that "he never used foul language toward any of the customers." (R. 396) (emphasis added). The stated purpose for the evidence was solely to show contradiction, and not to show bias against the appellant on account of his race.
On appeal, the Attorney General also argues that the proffered evidence was "collateral," because "words, no matter how insulting, do not, under the eyes of the law, justify retaliation by physical violence to a person." Appellee's brief at 16. While it is true that "[n]o words, however insulting, will excuse a homicide," Taylor v. State, 48 Ala. 180, 190-91
(1872) (emphasis added), the law in Alabama, at least until the adoption of the new criminal code, was that
 "[o]n the trial of any person for an assault, an assault and battery or an affray, he may give in evidence any opprobrious words or abusive language used by the person assaulted or beaten at or near the time of the assault or affray; and such evidence shall be good in extenuation or justification, as the jury may determine."
Ala. Code 1975, § 13-1-51 (cited in Maund v. State,361 So.2d 1144, 1147 (Ala.Cr.App. 1978)). Upon the adoption of the present Criminal Code, § 13-1-51 was repealed. See Ala. Code 1975, Title 13 (1982 Replacement Volume) at Table I — Sections Repealed *Page 241 
(by § 9901 of Acts 1977, No. 607 (Criminal Code)).
Because we find the appellant's offers of proof inadmissible on other grounds, we need not decide whether the principle contained in repealed § 13-1-51 states a common law rule of evidence which still applies in Alabama notwithstanding its repeal in statutory form.
 III
The appellant complains that the trial court erred in sentencing him immediately after the verdict without a separate sentencing/probation hearing and without giving him "notice of the prior conviction or convictions upon which the State intends to proceed."
The appellant did not object to the timing or conduct of his sentencing proceeding. He did not request a presentence investigation pursuant to Rule 3(a)(2), A.R.Crim.P.Temp. He is therefore precluded from raising this issue on appeal. SeeJames v. State, 500 So.2d 474, 478 (Ala.Cr.App. 1986).
Since appellant was not sentenced as a habitual offender, the notice provisions of Rule 6(b)(3)(ii), A.R.Crim.P.Temp., did not apply. The trial judge properly considered appellant's "prior criminal and juvenile record," Rule 3(b)(2), A.R.Crim.P.Temp., before imposing sentence. See Woods v. State,568 So.2d 331, 335 (Ala.Cr.App. 1990).
After sentence was pronounced, defense counsel maintained that the stick used in the assault was not a "deadly weapon." He argued that the court was not, therefore, authorized to sentence appellant to 10 years' imprisonment pursuant to §13A-5-6(a)(5) ("[f]or a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years"). The trial judge responded that even without considering the stick a "dangerous weapon," he would sentence appellant to 10 years "given the facts that I've heard in this case." "Absent some showing that the outcome of a new [sentencing] hearing would be materially different, the harmless error rule would apply."Garth v. State, 536 So.2d 173, 177 (Ala.Cr.App. 1988).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.