MONTIEL, Judge.
The appellants, James Ward and Jacklyn Ward, were convicted of rape in the first degree, § 13A-6-61, Code of Alabama 1975. Jacklyn Ward was convicted under a theory of aiding and abetting the rape. § 13A-2-23, Code of Alabama 1975. The trial court sentenced each of the Wards to 30 years in prison.
The evidence in this case tended to show the following: James Ward and Jacklyn Ward had been married 13 years at the time of the trial of this case. V.T., who was 17 at the time of trial, is Jaeklyn’s daughter from a previous marriage. V.T. testified that from the time she was four years old, her stepfather, James, had been sexually abusing her. She related for the jury the most recent incident of abuse, which she says occurred in late December 1989. According to V.T., James came into her bedroom and told her to *1004 go into his bedroom, where Jaeklyn was already in the bed. V.T. went into her parents’ bedroom. James then told V.T. to take off her clothes. V.T. testified that she “fussed about it,” but she said that James told her if she did not take off her clothes, he would get his belt. V.T. said she took off her clothes, and that then James told her to lie down on the bed. V.T. said that she did as she was told, and that James began to have sex with her. V.T. said Jaeklyn was lying next to her at this time. When James was about to ejaculate, V.T. testified, “he pulled out and went into Jackie.” James and Jacklyn then had sexual intercourse with V.T. lying in the bed next to them. V.T. testified that similar incidents had occurred in the past, sometimes as frequently as two or three times a week. On prior occasions, when she refused to have sex with James, V.T. testified, Jaeklyn would tell her to quit fussing and fighting James.
Jaeklyn and James Ward both testified at trial and denied the allegations of rape as alleged by V.T. Jaeklyn testified that she had called the police after an argument with James, and had told them that she wanted to go to Penelope House, which apparently is a shelter for abused women. Jaeklyn testified that when she found out she could not be accepted at Penelope House unless there had been some abuse, she made up the story about James molesting V.T. and told it to police. In addition, Jaeklyn testified that she told V.T. to say that James had sexually assaulted her once or twice a week for the two months before the conversation with police. Jaeklyn also testified that she did not understand the consequences of her allegation.
I
The Wards’ first contention is that the trial court erred by allowing the State to impeach Jaeklyn on a collateral matter. According to the record, Jaeklyn testified on direct examination that she had been fired from her job as a nursing assistant because of her arrest in this case. On cross-examination, she reiterated that she had lost her job because of the allegations against her and she denied that she was fired because she was soliciting her co-workers to have sex with her husband.
On rebuttal, the State called Jacklyn’s supervisor at the nursing home. The supervisor testified that Jaeklyn had been terminated for soliciting other employees for sexual favors for her husband. The supervisor also said that Jaeklyn had been notified of the reason for her termination. The State also called a former co-worker of Jacklyn’s, who testified that Jaeklyn asked her if she wanted extra money and asked would she have sex with her husband.
That rebuttal testimony, the Wards argue, was highly prejudicial impeachment testimony regarding an immaterial collateral matter and, therefore, should not have been admitted. The Wards correctly state that a witness may not be impeached on a collateral matter. Brundage v. State, 585 So.2d 238 (Ala.Crim.App.1991). “A fact is ‘collateral’ if it is ‘admissible neither upon an issue under the pleadings of the case nor for the purpose of impeaching the witness’ credibility in some means other than inconsistency.’” Brundage v. State, 585 So.2d at 240 (quoting C. Gamble, McElroy’s Alabama Evidence § 156.01(3) (4th ed. 1991)).
This case hinged on whether the jury believed Jacklyn’s and James’s testimony that V.T. had not been raped, or whether it was going to believe V.T.’s testimony that she had been raped. In Mims v. State, 500 So.2d 100, 104 (Ala.Crim.App.1986), a mother was convicted of rape for forcing her daughter to engage in sex with the mother’s boyfriend. As in this case, the victim in Mims testified that her mother would sit and watch the rapes as they occurred.
In Mims, the appellant objected to extrinsic evidence from the State’s rebuttal witness regarding a “pay off” the appellant had received in return for her noncooperation in the prosecution of two young men who had allegedly raped her daughter in a separate incident — an issue the appellant deemed immaterial and collateral to her case. This court held that the testimony was admissible for the purpose of impeaching the appellant, who had in turn sought to impeach the testimony of her daughter, the victim.
*1005 In this case, Jacklyn testified that her daughter’s testimony during the trial was untrue. Evidence that Jacklyn attempted to solicit women she worked with to have sex with her husband would be relevant, material, and probative to the jury’s determination of whether Jacklyn or her daughter, V.T., was telling the truth as to the charges against Jacklyn in this case, that is, whether she allowed her husband to have sex with V.T. The extrinsic evidence regarding the circumstances surrounding Jacklyn’s firing was admissible to impeach Jacklyn, who had tried to impeach her daughter, V.T., the victim in this case.
Furthermore, Jacklyn testified that she and her husband, James, had a “normal sex life,” and because of his health problems, they would have sex only once or twice a month. The Alabama Supreme Court has held:
“To affect the general credit of the witness the contradictory statements must relate to matter which is material to the issue on trial and not to those incidental or collateral facts which are remote in their application to the offense on trial and which would improperly extend the issues or involve the trial of other offenses which have no legitimate bearing on the particular offense under investigation.
“But there is an exception to this rule, that if it has relation to the credibility of the witness in the particular case it is admissible, although it be in respect to collateral or immaterial matter.”
Noble v. State, 253 Ala. 519, 521-22, 45 So.2d 857, 859 (1950) (emphasis in the original). In this particular case, evidence that Jacklyn tried to get her co-workers to have sex with her husband, and thus that James and Jacklyn did not have a “normal sex life,” would be relative, material, and probative. Furthermore, immediately before and after the challenged testimony, the trial court gave a limiting instruction to the jury, telling jurors that they were to consider that testimony only “to judge the correctness or incorrectness of certain statements already made by the defendant, Ms. Ward.”
For the reasons set forth above, we hold that the trial court did not err in allowing the testimony of Jacklyn’s former supervisor and co-worker.
II
The Wards next contend that the trial court erred in refusing to accept the jury’s verdict convicting Jacklyn Ward of sexual misconduct when the same jury had convicted James Ward of rape in the first degree. The Wards, whose cases were consolidated for trial, were charged with rape in the first degree. The State based Jacklyn Ward’s liability on a theory of complicity. The jury was instructed that sexual misconduct was a lesser included offense of rape in this case.
The jury initially returned a verdict finding James Ward guilty of rape in the first degree and a verdict finding Jacklyn Ward guilty of sexual misconduct. The trial court sent the jury back for further deliberations, saying the verdicts were inconsistent. The jury then returned a verdict finding Jacklyn Ward guilty of first-degree rape. Jacklyn Ward contends the trial court erred in refusing to accept the jury’s initial verdict against her. We agree.
We note first that inconsistent verdicts are not proper grounds for reversal under Alabama law. Hammond v. State, 497 So.2d 558, 562-64 (Ala.Crim.App.1986); Kirby v. State, 581 So.2d 1136 (Ala.Crim.App.1990). Juries may return inconsistent verdicts for a variety of reasons, including mistake, compromise or leniency. “But in such situations the Government has no recourse if it wishes to correct the jury’s error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution’s Double Jeopardy Clause.” Hammond v. State, 497 So.2d at 562 (quoting United States v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984)). Neither should the trial court be able to take it upon itself to determine that the inconsistent verdicts are error and require the jury to deliberate further in order to correct that error. Therefore, even though the trial court believed the verdicts in this case were inconsistent, the court should have accepted the verdicts as they were originally returned by the jury-
*1006 Moreover, had the defendants in this case been tried separately, James Ward could properly have been convicted of first degree rape, and Jacklyn Ward could properly have been convicted of sexual misconduct. In Parker v. State, 516 So.2d 859 (Ala.Crim.App.1987), the appellant argued that his conviction for first degree rape should be reversed because two of his codefendants had been convicted of second degree rape, and a third codefendant had pleaded guilty to second degree rape. Because the facts were the same in all four cases, the appellant argued, the greatest offense he should have been convicted of second-degree rape. This court said:
“It is not the law, nor is it reasonable, that a jury should be bound in [its] determination of guilt or innocence by verdicts of other juries in trials of co-defendants. Different juries reviewing the same set of facts may reasonably reach different results. Lewis v. Moss, 347 So.2d 91 (Ala.1977). Appellant’s argument ignores the fact that there can be different degrees of culpability among co-defendants.”
In this case, the single jury hearing the case against both defendants could have decided that Jacklyn was not as culpable as James, and could have, therefore, decided to convict her of the lesser included charge of sexual misconduct. The fact that Jacklyn was indicted under a theory of complicity makes no difference. The law is that an aider or abettor may be convicted of a felony even though the principal had been acquitted or convicted of a misdemeanor at an earlier trial. Ex parte Williams, 383 So.2d 564 (Ala.1980), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). If the aider or abettor can be convicted of a greater offense than the principal, it stands to reason that the principal can be convicted of a greater offense than the aider or abettor, as happened in this case.
For the reasons stated above, we hold that the trial court erred in refusing to accept the jury’s original verdicts in this ease. We affirm James Ward’s conviction for first degree rape but reverse Jacklyn Ward’s conviction for first degree rape. We instruct the trial court-to reinstate the jury’s original verdict of guilty of sexual misconduct, a lesser included offense of rape in the first degree against Jacklyn Ward.
The judgment of the trial court is affirmed as to James Ward’s conviction for first degree rape, and reversed as to Jacklyn Ward’s conviction for first degree rape. This cause is remanded to the trial court for that court to enter a judgment against the defendant Jacklyn Ward consistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
All the Judges concur.