The State appeals from the trial court's granting of a pretrial order to suppress recorded telephone statements of the accused. The trial court found that the statements had no probative value as to any issue in the case and were, therefore, immaterial.
Frances Noell Thrash, a 17-month old girl, died as a result of a blow to the rear left side of her head. The defendant was charged with the murder. § 13A-6-2, Code of Alabama 1975.
During the investigation, the defendant gave several recorded statements to the police. The police also recorded, without the defendant's knowledge, several telephone conversations between Kathy Austin Thrash, the defendant's girlfriend and the victim's mother, and the defendant. Additionally, a reenactment of attempts by the defendant and Kathy Austin Thrash to administer CPR to the child was videotaped.
Because the court reporter lost the tape of the first hearing on the motions in limine and motions to suppress, a hearing to reconstruct the record of that hearing was held. The parties stipulated, based on the findings of a pathologist, that the blow occurred "between April 22, after the child ate dinner, up to 3:00 p.m. on April 23, 1991." Thereafter, defense counsel made numerous motions in limine to prevent the State from mentioning the following matters:
 "1) The defendant allegedly forced the victim's mother to have sexual relations with him;
 "2) The defendant allegedly stated that all babies should be shot in the head when they're born;
"3) The defendant had an 'alias';
 "4) The defendant had failed a polygraph test; and
"5) The defendant's audio and video statements."
The trial judge who originally conducted the suppression hearing on the motions testified that he denied the motion as to the defendant's alias. However, he testified that he granted the defendant's motions as to the allegations of forced sex, the statement that babies should be shot at birth, and the results of a polygraph test. The trial judge testified that, with respect to the videotape and transcriptions of the recorded telephone conversations, the trial judge granted the defendant's motions on grounds that the video tape and audiotape did not contain any *Page 2 
evidence material to any issue before the court. Specifically, the trial judge testified:
 "The facts as I viewed them in making my determination [were] based on two bases, on the bases of materiality and the prejudicial effect, based primarily on the materiality of the issues. I was confronted with statements from the telephone conversations and the wire; there is no confession as to the crime involved in this case in any of those tapes by my viewing of [them]. The issue was in his initial tape in showing what he did to try to revive the child on the evening at a time period in which he, according to the agreement of the parties, was at a time when any blow or anything done to the child would not have affected the life or death of the child either way.
 "The Defendant gave a statement and at a later time he gave a materially inconsistent statement about the location, the things that were done to the child, where the child first started having the stress, what he did to the child at that time. But all of those statements related to a time, which according to the stipulation of the parties, was beyond the operative time of this crime or when it could have happened. There were no facts contained in these statements which related to the Defendant's — or to any issue of the Defendant's involvement in this case. There were clearly statements involved or the inconsistency of the statements clearly reflected on the veracity of the defendant.
 "However, it was my opinion that the fact that he may have lied about an occurrence at one time was not proof for the State's case-in-chief to present a material issue on his guilt or innocence in the case in the charge in which he was dealing with. It was my determination, then, that the statements were immaterial to the issues, the issues of guilt and the factual issues of this case as related to the blow during the time period which the medical expert says the blow would have had to have been struck.
 "Because of the anguish I was going through, as a second issue which did take my consideration, the extreme prejudicial value of those statements — of those inconsistent situations and the question it would place on his veracity, because of the fact I determined them immaterial, I felt they would be incredibly prejudicial to the Defendant to even allow it to proceed and see what the jury would do to see if we could remove the report that way. I just didn't feel like justice could permit me to do that, and because of the immateriality I excluded the evidence. And that was the basis of the ruling. . . . I think I didn't want the man convicted because he was a liar. I didn't feel like that was an appropriate basis for finding [guilt]. And those statements very well may prove that he was a liar about what he did that night. But it was not material to the crime during the objective period during [which] this crime must have occurred if there was a crime committed.
 "And also the child was in the custody of various individuals during the objective period they were looking for trauma, and they were focusing in on it in a time period which was found to be the objective time period of this crime.
 "I did specifically, Judge, from my recollection, I did review all of the tapes in their entirety. I did read all of the statements in their entirety. I do not believe I actually saw a copy of the autopsy. That was based upon the agreement of the parties. And it is my recollection that the parties did stipulate that the operative blow which caused the child's death would have occurred before 3:00 p.m. on April the 23. And the statements and the time of the actions which the Defendant referred to in his various statements occurred well past 3:00 p.m. on April the 23."
Regarding materiality, McElroy's, treatise provides:
 "Any orderly analysis, as to the admissibility of an item of evidence, should begin with the concept of materiality. Fruitful inquiry into materiality can only begin when the objecting party succeeds in forcing his opponent to announce the purpose for which he is offering the evidence. Once that purpose is identified, the materiality question then becomes one of whether *Page 3 
that purpose is an issue in the case being litigated. Stated alternatively, as expressed in the Federal Rules of Evidence, materiality involves whether the purpose . . . 'is of consequence to the determination of the action. . . .' "
See C. Gamble, McElroy's Alabama Evidence § 20.01 (4th ed. 1991).
It is well settled that "a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion." Jennings v. State, 513 So.2d 91, 95
(Ala.Cr.App. 1987). McElroy's Alabama Evidence § 21.01(6) provides:
 "[T]he power to decide whether evidence is to be excluded . . . is within the sound discretion of the trial judge. This is where such power should lie because, unless some discretion is vested in the trial judge, every ruling upon the admissibility of a particular fact of a kind above-mentioned becomes a law unto itself. If any particular rule of evidence runs into numerous borderline cases, we must either give the trial court some discretion in applying it or admit that the rule is not workable at all. This argument for the investiture of a measurable discretion in the trial court must not be taken, however, as suggesting that an appellate court ought not to correct a plainly prejudicial misuse of discretion by the trial court."
A careful review of the record indicates that the trial judge erred when he granted the defendant's motions to suppress and motions in limine regarding the taped telephone conversations and video reenactments. The statements and video reenactments were material because they were of consequence to the actions being litigated and indicated a consciousness of guilt by the appellant.
The trial judge stated at the hearing that he had suppressed the defendant's statements because "the actions which the defendant referred to in his various statements occurred well past 3:00 on April 23" which, according to a stipulation of the parties, was subsequent to the time at which evidence showed that the blow could have occurred. The parties' stipulation concerning the time of death was based on an autopsy of the victim conducted by a state medical examiner, Dr. Kenneth Warner. Dr. Warner ultimately found that the victim died of craniocerebral trauma and found that the blow responsible for the victim's death occurred one to two hours after she had ingested food with a high fatty content, such as ham and eggs. However, the defendant made statements both to the police and to the victim's mother concerning the events that occurred on the morning of April 23, 1991, approximately 10 hours before the victim lapsed into a coma. More particularly, the appellant told police that on the morning in question he had fed the victim ham and eggs. He stated that, because the victim was calling for her "mommy," he took her out of her high chair and placed her on the floor. He denied hitting the victim, however. Additionally, the defendant stated, during taped telephone conversations with the victim's mother, that he could not talk to her on the telephone about what happened on the morning of April 23 because his phone "might be tapped." When the victim's mother insisted that she would not see him until he told her what happened, he told her "Sweetie, I couldn't tell you something like that over the phone anyway." He again denied hitting the victim.
This court, in Sheridan v. State, 591 So.2d 129, 131
(Ala.Cr.App. 1991), stated:
 "It is well settled that the acts, declarations, and demeanor of an accused before or after the offense, whether a part of the res gestae or not, are admissible against him, but that unless they are a part of the res gestae they are not admissible for him. Smoot v. State, 381 So.2d 668
(Ala.Cr.App. 1980). This court has also stated that '[a]ny conduct or declaration of a person having relation to the offense he is suspected of or charged with, indicating a consciousness of guilt, is admissible evidence against him.' Sparks v. State, 376 So.2d 834, 843 (Ala.Cr.App. 1979)."
See also Knox v. State, 571 So.2d 389 (Ala.Cr.App. 1990);Nicks v. State, 521 So.2d 1018 (Ala.Cr.App. 1987), aff'd, Exparte Nicks, 521 So.2d 1035 (1988), Nicks v. Alabama,487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 *Page 4 
(1988). Additionally, in Magro v. State, 384 So.2d 871, 875
(Ala.Cr.App.), cert. denied, Ex parte Robert Angelo Magro,384 So.2d 875 (1980), this court held:
 "[A]ny indications of a consciousness of guilt, however minute or insignificant they may be, are admissible against a defendant if they tend to elucidate the transaction. McAdory v. State, 62 Ala. 154 (1878). Generally it is permissible to show the whereabouts of the defendant both prior and subsequent to the commission of the offense to the time of his arrest. Clifton v. State, 359 So.2d 853 (Ala.Cr.App. 1978)."
See also Franklin v. State, 145 Ala. 669, 39 So. 979 (1906) (wherein this court held that "[a] false explanation given by the accused of any suspicious fact or circumstances tending to connect him with the offense is admissible in evidence against him.")
Here, the defendant's transcription of the police recorded telephone conversations and video reenactments were admissible to show a consciousness of guilt and therefore should not have been suppressed by the trial judge.
This cause is reversed and remanded for proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.