[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 630 
This is a personal injury case in which the plaintiff, Sabrina Fomby, appeals from a judgment entered on a jury verdict in favor of the defendant, James Popwell.
The facts of this case are as follows: On August 6, 1994, Fomby and two of her friends, Stacey Baker and Jill Rogers, were planning to spend the day boating on Lake Martin. At some point, they decided to dock their boat and to ride with Popwell and two of his friends, Matthew Scott and Ernie Scott, in a ski boat owned by Popwell's father. The witnesses testified that the weather conditions were windy and that the lake was crowded and the water was choppy. Fomby and her friends had been riding in Popwell's boat for approximately 3 to 4 hours when they came upon the wake of a houseboat. Popwell, who was driving the boat, testified that he crossed the wake at a 45-degree angle. When the boat crossed the wake, it caused Fomby, who was sitting or squatting on the floor of the boat between the driver's seat and the passenger's seat, to bounce in the air and land on her back. As a result, Fomby's back was broken. None of the other passengers was injured. The witnesses testified that there were empty seats available for Fomby to use at the time her injury occurred.
Fomby sued Popwell, alleging that he had negligently or wantonly caused her injury. The case proceeded to trial on both claims; however, at the conclusion of Fomby's evidence, the trial court granted Popwell's motion for a directed verdict on the claim of wantonness. The trial continued on the issue of negligence, and the jury returned a verdict in favor of Popwell. Fomby appealed to the Alabama Supreme Court, which deflected the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Fomby raises several issues on appeal. First, she argues that the trial court abused its discretion in denying her motion to compel Popwell to produce certain requested discovery. *Page 631 
The record reflects that Fomby requested Popwell to produce copies of:
 "Any and all statements made by any witness who may be called at the trial of this cause (specifically including, but not limited to, any statements made by James Popwell, Matthew Scott, Ernie Scott, and Robert G. Popwell). Said request specifically includes any and all statements made by any witness to the defendant's insurance carrier."
Popwell objected to the production of statements made to his insurance carrier on the ground that these statements constituted work-product and were not discoverable pursuant to Rule 26(b)(3), Ala. R. Civ. P. Popwell also moved the court to enter an order protecting these statements from discovery. After allowing the parties to argue their positions at the pre-trial hearing on February 14, 1996, the trial court denied Fomby's request as to statements made by Matthew Scott and James Popwell. Apparently, there was some confusion as to the trial court's ruling, which the court clarified at the request of Fomby's attorney on February 26, 1996, the first day of trial. Although the court clarified its order for the record on February 26, the record reflects that Fomby's attorney had spoken with the trial judge the previous week, and had at that time orally received clarification of the trial court's ruling.
Rule 26(b)(3) protects documents and other tangible things prepared "in anticipation of litigation" by a party or a party's representative, and specifically includes a party's insurer as such a representative. Under this rule, the work-product is discoverable
 "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."
Rule 26(b)(3), Ala. R. Civ. P.
In determining whether the trial court abused its discretion in denying Fomby's motion to compel, we initially note that Fomby has failed to utilize the proper method for obtaining appellate review of the trial court's decision. Indeed, a petition for a writ of mandamus is the proper means for achieving appellate review of a trial court's determination regarding discovery matters. Ex parte Mobile Fixture Equipment Co., 630 So.2d 358 (Ala. 1993). By failing to utilize the proper procedure, Fomby has allowed this case to proceed to trial without first testing the correctness of the trial court's ruling on discovery.
Although Fomby's failure to use the proper procedure constitutes sufficient grounds for an affirmance of the trial court's decision, we note that the trial court's ruling deserves affirmance on substantive grounds as well. In reviewing determinations regarding discovery issues, we will not reverse the trial court's decision absent a clear showing that the trial court abused its discretion. Ex parte MobileFixture Equipment Co., supra.
The Alabama Supreme Court has held that the party objecting to discovery based on the work-product exception must show that the discovery was prepared "in anticipation of litigation"; however, this showing is required only if the party requesting the discovery first argues that the discovery was not prepared "in anticipation of litigation." Ex parte Garrick,642 So.2d 951, 953 (Ala. 1994).
Fomby submitted her affidavit and the affidavit of her mother, in which they represented that they did not immediately intend to file a lawsuit, to show that any statements taken by Popwell's insurer could not have been taken in anticipation of litigation. However, Popwell argues that his insurer had solid reasons to expect that Fomby's claim would result in a lawsuit. Popwell notes that within one month after the accident, Fomby's mother had written Popwell's insurer and had requested compensation for various expenses, such as wages she lost while caring for Fomby, Fomby's college expenses for the summer term that she missed because of the accident, and various medical expenses. She also requested that Fomby be compensated for her "pain and suffering." Because Popwell's insurer was aware that his policy contained medical payment limits of *Page 632 
$1,000, and because Fomby's request clearly exceeded $1,000, the insurer knew that any payments to Fomby that exceeded $1,000 would be based on a showing that Popwell was negligent. The insurer was, of course, also aware of the unusual nature of the accident itself, in which it was not clear that Popwell was in any way at fault, and thus was aware that the claim was not likely to be resolved without a lawsuit. Therefore, the insurer would have reasonably anticipated that a lawsuit was forthcoming. See, e.g., Ex parte State Farm Mutual AutomobileIns. Co., 386 So.2d 1133, 1136 (Ala. 1980).
Because Popwell established that the statements were taken in anticipation of litigation, Fomby could not obtain these statements without first showing that she had a substantial need for this information and that it could not otherwise be obtained without suffering undue hardship. The record reflects that Fomby deposed both Popwell and Matthew Scott, and that they testified at trial as well. Thus, Fomby had access to the substantial equivalent of the statements possessed by Popwell's insurer, and there is no indication that the trial court was presented with any evidence showing that Fomby could not obtain this information without suffering undue hardship. Therefore, the trial court did not abuse its discretion in denying Fomby's motion to compel.
Fomby also argues that the trial court erred in sustaining Popwell's hearsay objection to a question posed to witness Stacey Baker. The trial transcript shows that Fomby's attorney questioned Baker as follows:
 "Q. Now, has Sabrina expressed to you during — From the time that she got hurt up until now, has she ever expressed to you any specific concerns that she has?
"A. She is worried about — "
Baker was prevented from completing her statement by Popwell's attorney, who objected on the basis of hearsay. Fomby's attorney argued that the statement was admissible under the hearsay exception for then existing mental conditions. After the parties conferred with the trial judge off the record, Popwell's objection was sustained.
Rule 803(3), Ala. R. Evid., provides that the following is not excluded by the hearsay rule:
 "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."
Under this rule, "[a] statement directly asserting or circumstantially indicating the existence in the declarant of an emotion such as love, hatred, fear, malice, mental pain or their opposites, is admissible under the present hearsay exception." C. Gamble, McElroy's Alabama Evidence § 261.03(5) (5th ed. 1996).
Thus, Baker could have testified as to Fomby's statements that reflected Fomby's mental anguish. However, it appears that Baker was instead attempting to testify as to the cause of Fomby's mental anguish. In other words, while this rule permits Baker to testify that Fomby said she was worried, it does not permit her to testify as to the causes of her worry. See, e.g.,United States v. Joe, 8 F.3d 1488 (10th Cir. 1993) cert. denied,510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994) (holding that the declarant's statements of fear were admissible under this exception, but that statements revealing the cause of his fear were not), cited in Gamble, supra, at § 261.03(5), n. 1. Thus, the trial court did not err in sustaining Popwell's objection.
Fomby also contends that the trial court erred in sustaining Popwell's objection to Fomby's rebuttal testimony. The record reflects that Robert Popwell was called to testify as a witness for his son, defendant Popwell. In his testimony, Robert Popwell described his efforts to teach Popwell to operate a boat and also described Popwell's experience in boating. On cross-examination, he was questioned as follows:
 "Q. And that night that you say that you were at Heartland and saw Sabrina there, you had a discussion with her, did you not?
"A. Asked her how she was feeling. *Page 633 
"Q. And you talked to her, didn't you?
"A. Yes, I did.
 "Q. Isn't it a fact that you told Sabrina that evening during that discussion that James was reckless?
"A. No, it's not."
Robert Popwell was further cross-examined as follows:
 "Q. Your testimony is that if Sabrina Fomby came in here and testified when you talked with her that night at the Heartland that — if she came and told this jury that you told her that you knew James was a reckless person, that would not be true?
"A. That is not true."
After the completion of Popwell's evidence, Fomby was called as a rebuttal witness, and, after being refreshed as to Robert Popwell's testimony, was questioned by her attorney as follows:
 "Q. And while he [Robert Popwell] was on the stand, I asked him a question or a series of questions in regard to a conversation with you that took place at the Heartland.
"A. Yes, sir.
 "Q. Do you remember that conversation? "A. Yes, sir.
"Q. Approximately when was that?
"A. In December '94.
 "Q. Would you tell us what the substance of that conversation was?"
Fomby was prevented from responding by an objection by Popwell's attorney, which was sustained by the trial court after hearing the arguments of both parties.
Fomby contends that she should have been permitted to testify that Robert Popwell referred to his son as "reckless" because, she argues, this testimony was offered to show that Robert Popwell had made a prior inconsistent statement. Fomby also argues that this testimony was not excluded by the rule against hearsay because she says it was offered for purposes of impeachment and was not offered to prove the truth of the matter asserted. Popwell contends that, even if the testimony was offered for impeachment, it was properly disallowed as rebuttal testimony offered for impeachment on a collateral matter.
Generally, a witness may not be impeached on a collateral matter. Brundage v. State, 585 So.2d 238 (Ala.Crim.App. 1991). A fact is "collateral" if it is "admissible neither upon an issue under the pleadings of the case nor for the purpose of impeaching the witness' credibility in some means other thaninconsistency." Id. at 240 (emphasis added), quoting C. Gamble,McElroy's Alabama Evidence § 156.01(3) (3rd ed. 1977). Although a party is not prohibited from cross-examining a witness as to an inconsistency on a collateral matter, the impeaching party must accept the witness's answer and may not offer extrinsic proof. C. Gamble, McElroy's Alabama Evidence § 156.01(1) (5th ed. 1996).
Fomby's rebuttal testimony was not admissible upon an issue under the pleadings of the case nor for the purpose of impeaching Robert Popwell's credibility in some means other than inconsistency. Indeed, her testimony could not otherwise have been admitted, because it would have constituted both inadmissible character evidence and hearsay. See Rules 404, 801, 802, Ala. R. Evid. Because the sole purpose of the testimony was to impeach Robert Popwell on the basis of an inconsistency, the trial court properly sustained Popwell's objection. See Gober v. Khalaf, 628 So.2d 416 (Ala. 1993); seealso, C. Gamble, McElroy's Alabama Evidence § 156.01(6) (5th ed. 1996) (stating that "[i]f a witness testifies on cross-examination that he did not make a statement concerning a material occurrence, it is not permissible for the party against whom he is called to prove that the witness did make such a statement").
Fomby also argues that the trial court erred by directing a verdict in favor of Popwell on the claim of wantonness. A motion for directed verdict permits the trial court to determine whether there is substantial evidence to support all the elements of a claim. First Financial Ins. Co. v. Tillery,626 So.2d 1252 (Ala. 1993). In reviewing the trial court's ruling on a motion for directed verdict, this court must view all evidence in a light most favorable to the nonmovant. Id. *Page 634 
Our Supreme Court has described wanton conduct as "acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury."Lynn Strickland Sales Service, Inc. v. Aero-Lane Fabricators,Inc., 510 So.2d 142, 145 (Ala. 1987).
Fomby produced evidence showing that the lake was crowded on the day of the accident and that as a result of the wind and the movement of other boats the water was rough and choppy. Although she showed that Popwell was aware of the rough conditions, she presented no substantial evidence that he was aware that these conditions were dangerous. The evidence showed that the rough waters and crowded conditions were normal conditions for a Saturday and that there were no speed limits or "no wake" signs in the area where the accident occurred. None of the passengers alerted Popwell to any danger or asked him to slow down before crossing the wake. Because Fomby failed to produce substantial evidence of wantonness, the trial court properly directed a verdict in favor of Popwell on this claim.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and CRAWLEY, JJ., concur.