COBB, Judge,
dissenting.
I respectfully dissent from the majority’s unpublished memorandum affirming the conviction and sentence in this case.
Jason Keith Taylor was indicted for manslaughter, a violation of § 13A-6-3(a)(2), Ala.Code 1975, and, on April 17, 2001, he was convicted of that charge. On May 29, 2001, Taylor was sentenced to 20 *294 years in prison. Taylor filed a motion for a new trial, which the trial court denied after a hearing. This appeal followed.
The evidence at trial revealed that, on August 29, 1999, Taylor shot his girlfriend, Lisa Bergman, during an argument. In one of his statements to police, Taylor maintained that the victim was threatening his two-year-old son by holding a knife to the baby’s throat when Taylor shot her. The State presented evidence indicating that the victim was holding a knife-sharpener when she was shot. Taylor stated that he took his son to a nearby convenience store and telephoned emergency 911 because he had previously tripped on the telephone cord at the residence and pulled it from the wall. The victim was dead when the police arrived at the crime scene.
Taylor argues that the trial court erroneously denied his motion in limine to exclude testimony by the victim’s mother about her conversation with the victim the night before she died. He contends that the testimony was inadmissible hearsay. Taylor first advanced this particular argument in his motion in limine, which the trial court denied after a hearing. At trial, as the prosecutor began to question the victim’s mother about the telephone conversation, trial counsel objected, stating:
“[Trial counsel]: Your Honor, just for the record, based on my motion in limine I would like a continuing objection on the reasons I relied upon in my motion in limine pursuant to that phone conversation.
“THE COURT: Okay. The objection would be noted and continued] to be overruled.”
(R. 270-71.)
Evidence at trial revealed that, approximately six weeks before her death, the victim had been diagnosed with hepatitis-C and had an appointment to have a liver biopsy performed to verify the diagnosis. The victim was ill and was concerned about the outcome of the biopsy. The victim’s mother testified that, the night before her daughter died, she telephoned her daughter to talk to her about wedding rings the mother was making for her daughter and Taylor. The mother testified that her daughter said, “Mom, ... I’m not gonna be here to wear that ring. I originally wanted it because [Taylor] and I were planning to get married. I’m not gonna be — I’m gonna be dead and put it on my finger in my coffin.” (R. 272.) The mother testified that her daughter made references to her own death “[m]ore than a couple of times. And I assumed that because she was sick and scared with the biopsy coming up that she was talking about being afraid.” (R. 272.) The mother also testified that her daughter said that she would not be fighting with her sister over who would have the prettiest ring and that her daughter said, “There won’t be no fight, mamma. I won’t be here.” (R. 274.) The mother testified that the victim was frightened because the victim’s niece had died from hepatitis. In her statement to the police, the mother had stated that she believed her daughter made the remarks about her death because of the hepatitis diagnosis. However, at trial, she testified: “I did think she was scared until I found out she was dead and then I realized she was in trouble and I had made the biggest mistake of my life by not calling the police.” (R. 280.)[1]
In its unpublished memorandum, the majority holds 1) that the testimony was not hearsay because “[i]t does not appear *295 that the State offered Riddle’s testimony to prove the truth of the matter asserted therein”; 2) that even if the testimony were hearsay, it was admissible as a statement of the victim’s then state of mind under Rule 803(3), Ala. R. Evid.; and 3) that even if admission of the testimony were error, it amounted to harmless error because the testimony was cumulative. I address each of these holdings in turn.
I.
“It is well settled that ‘a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion.’ ” State v. Mason, 675 So.2d 1, 3 (Ala.Crim.App.1993) (quoting Jennings v. State, 513 So.2d 91, 95 (Ala.Crim.App.1987)). “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid. “Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute.” Rule 802, Ala. R. Evid.
I am hard-pressed to imagine any other reason the State offered Riddle’s testimony other than for the truth of the matter asserted. The State sought to prove that the victim thought she was going to die, albeit at the hands of the appellant, which is exactly what the victim’s mother testified to. In fact, the victim’s mother went a step further and testified about what she believed was the cause of the victim’s belief that she was going to die — that the appellant was allegedly going to kill her.
II.
Which brings me to my second reason for dissenting.
“ ‘A statement made by the victim of a crime is ordinarily hearsay and inadmissible, unless it constitutes a recognized exception such as res gestae, a dying declaration, a threat, a declaration as to state of mind made by a victim upon his departure to meet the defendant, or a complaint in connection with a sex crime.’ C. Torcía, Wharton’s Criminal Evidence § 260 (14th ed.1986). ‘Statements and declarations of a deceased are not competent evidence for or against an accused in a murder prosecution unless made in his presence, or unless they are admitted in evidence as part of the res gestae or constitute dying declarations.’ Lovett v. State, 491 So.2d 1034 (Ala.Cr.App.), cert. denied, 491 So.2d 1039 (Ala.1986) (quoting from Hargrove v. State, 368 So.2d 335, 337 (Ala.Cr.App.1979)). See also Holland v. State, 162 Ala. 5, 50 So. 215 (1909).”
Jones v. State, 570 So.2d 775, 778 (Ala.Crim.App.1990) (emphasis added).
Rule 803(3) provides that the following is not excluded by the hearsay rule:
“A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declar-ant’s will.”
(Emphasis added.) The testimony of the victim’s mother speaks to the fact that the victim thought, not feared, that she was *296 going to die. This is not a state of mind or emotion. This is a belief. The victim’s belief, as opposed to her state of mind, is not admissible under the exception to hearsay testimony in Rule 803(3), as the Rule clearly states. See also United States v. Joe, 8 F.3d 1488, 1492 (10th Cir.1993), and United States v. Cohen, 631 F.2d 1223, 1225 (5th Cir.1980) (“But the state-of-mind exception does not permit the witness to relate any of the declarant’s statements as to why he held a particular state of mind.... If the reservation in the text of the rule is to have any effect, it must be understood to narrowly limit those admissible statements to declaration of condition — ‘I’m scared’ — and not belief — ‘I’m scared because [the defendant] threatened me.’ ”).
Moreover, the victim’s mother’s testimony did not merely encompass the fact that the victim thought she was going to die. Some of the victim’s mother’s testimony indicated the mother’s belief that the reason the victim thought she was going to die was the appellant. The Alabama Court of Civil Appeals has addressed a similar issue in Fomby v. Popwell, 695 So.2d 628, 632 (Ala.Civ.App.1996):
“Thus, Baker could have testified as to Fomby’s statements that reflected Fomby’s mental anguish. However, it appears that Baker was instead attempting to testify as to the cause of Fomby’s mental anguish. In other words, while this rule permits Baker to testify that Fomby said she was worried, it does not permit her to testify as to the causes of her worry. See, e.g., United States v. Joe, 8 F.3d 1488 (10th Cir.1993), cert. denied, 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994) (holding that the declarant’s statements of fear were admissible under this exception, but that statements revealing the cause of his fear were not), cited in [C. Gamble, McElroy’s Alabama Evidence § 261.03(5), n. 1 (5th ed.1996) ].”
See also United States v. Joe, supra, and United States v. Cohen, supra. Certainly, then, the mother’s opinion testimony indicating that the reason her daughter thought she was going to die was that the appellant was going to kill her was inadmissible.
III.
As an aside, I would also like to point out that the victim’s statements were neither part of the res gestae nor dying declarations. The victim’s statements were uttered some seven hours before her death.
“The state argues that the statements and declarations of the deceased, as related by his sister and mother as set out above, constituted a part of the res ges-tae of the crime, and thus were admissible in evidence as exceptions to the hearsay rule. We do not agree. ‘Utterances made before the occurrence of the main fact may be admissible as part of the res gestae, if made as a part of the principal transaction, in reference to or in contemplation of it, or if it tends to explain the intent, motive, or purpose of the declarant.’ R. Williams, Williams’ Alabama Evidence § 141 (1967). ‘ “To be admissible as res gestae, the declaration of a deceased person must have been made at such a time and under such circumstances as to be a part of the transaction which [it purports] to explain .... ” ’ Lovett v. State, 491 So.2d [1034, 1036 (Ala.Crim.App.1986)].
‘We find an excellent definition of the res gestae principle in Harrison v. Baker, 260 Ala. 488, 493, 71 So.2d 284, 288-89 (1954), wherein the Alabama Supreme Court, quoting from Alabama G.S.R. Co. v. Hawk, 72 Ala. 112, 117 (1882), stated as follows:
*297 “ ‘ “It is commonly said to have reference to such circumstances and declarations as are contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character. 1 Greenl. Ev. § 108. What lapse of time is embraced in the word ‘contemporaneous’ is often a question of difficulty. Perfect coincidence of time between the declaration and the main fact is not, of course, required.... The declaration must, however, be so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so closely connected with it as to virtually constitute but one entire transaction, and to receive support and credit from the principal act sought to be thus elucidated and explained. The evidence offered must not have the ear-marks of a device, or afterthought, nor be merely narrative of a transaction which is really and substantially past.” ’
“In the instant case, the testimony, relating statements or declarations made by the deceased several hours pri- or to the shooting was clearly inadmissible hearsay, and its admission in this case constituted reversible error. The declarations of the deceased were not so connected with the incident or transaction as to be a part of it or, as we say, a part of the res gestae. They were not connected to the crime, nor to some relevant or connected transaction, and did not form a part of it. His narrative concerning his relationship with appellant and the events that had occurred up to the time of his conversations with his sister and mother were not connected with the shooting, nor were they in contemplation of it. They do not explain or elucidate it. The declarations are narratives of past transactions and are lacking in spontaneity.”
Jones, 570 So.2d at 778-79.
I would reach the same result in this case. Taylor’s statements indicated that the shooting occurred around 3:00 a.m. on August 29, 2001. The victim’s mother testified that she spoke to her daughter on the telephone between 7:00 and 8:00 p.m. on the night of August 28, 2001. The shooting occurred some seven to eight hours after the victim had talked to her mother on the telephone. Therefore, the statements were clearly neither dying declarations nor part of the res gestae. The trial court erroneously allowed the mother’s testimony about the victim’s statement regarding her impending death.
IV.
Finally, I cannot say that this error was harmless.
“ ‘The standard for determining whether constitutional error is harmless is whether the court can “declare a belief that it was harmless beyond a reasonable doubt.” Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In determining whether constitutional hearsay error is harmless, a court may consider numerous facts, including
“ ‘ “ ‘the importance of the [declar-ant’s] testimony in the prosecution’s case whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the [declarant] on material points, ... in the overall strength of the prosecution’s case.’ Delaware v. Van Arsdall, 475 U.S. [673], 684, 106 S.Ct. 1431, 889 L.Ed.2d 674 [(1986)].”
“ ‘James v. State, 723 So.2d 776, 781 (Ala.Crim.App.), cert. denied, 723 So.2d 786 (Ala.1998).’
*298 “Ex parte Dunaway, 746 So.2d 1042, 1050 (Ala.1999) (Lyons, Justice, concurring in the judgment and concurring in part and dissenting in part as to the rationale).”
Baker v. State, [Ms. CR-95-0292, January 12, 2001] -So.2d -, - (Ala.Crim.App.2001).
The majority claims that the inadmissible testimony was cumulative to the following excerpt from Taylor’s statement to the police, which was read into evidence twice at trial:
“She said, “When mother calls back to not to worry [sic] about the rings, just to give her them.’ [She] said she just wanted her something made to be buried in. She said this because she knew she was dying.”
(R. 145, 172.) This portion of Taylor’s statement is not “ ‘to the same effect’ ” or a statement “ ‘from which the same facts can be inferred’ ” as the mother’s testimony. Smith v. State, 795 So.2d 788, 815 (Ala.Crim.App.2000) (quoting Yeomans v. State, 641 So.2d 1269, 1272 (Ala.Crim.App.1993)). On the one hand, as discussed below, the sum total of the victim’s mother’s testimony greatly prejudiced Taylor’s defense by allowing the inference that Taylor was somehow the reason the victim believed she was going to die and by corroborating the State’s otherwise weak evidence of Taylor’s allegedly violent nature. On the other hand, Taylor’s sole admission in his statement to the police that the victim thought she was dying, unadorned by the victim’s mother’s embellishments as allowed by the trial court, did not have the same effect of impheating Taylor and corroborating the State’s evidence of his allegedly violent temperament. Therefore, the prior admission of this statement does not render the subsequent testimony of the victim’s mother cumulative and therefore harmless.
Furthermore, the inadmissible testimony was extremely prejudicial to Taylor, particularly because it “cast [him] as an aggressor and a person prone to violence, and it tended to undermine and discredit [his] theory of [defense of his child].” Jones, 570 So.2d at 779. In fact, the record reveals that the State was intentionally trying to create an impression of Taylor as a violent person.[2] The victim’s mother’s testimony not only served to corroborate the State’s theory that Taylor was violent, but also was the most compelling evidence of Taylor’s alleged violent predisposition. Therefore, I cannot agree that the admission of the mother’s testimony was harmless beyond a reasonable doubt.
For the reasons stated above, I would have reversed the judgment of the trial court and remanded this cause for a new trial. Therefore, I dissent.

. Taylor also takes issue with the mother’s testimony that she heard her daughter say to Taylor's son, " 'Come here, sweetie, and let me get your shoes off so you can get in bed with Aunt Lisa.’ ” (R. 274.) However, this testimony was not included in Taylor's origi *295 nal motion in limine, and Taylor did not object to its admission at trial. Therefore, any argument he advances regarding this statement has not been preserved for appellate review.

. The State questioned a friend of the victim to elicit testimony regarding an argument between the victim and Taylor a month before the shooting regarding the decision to keep a gun in the house. The State questioned another friend of the victim to elicit testimony regarding an allegedly threatening comment made by Taylor immediately after another argument with the victim at least two weeks before the shooting. Finally, the State questioned the victim’s mother to elicit testimony regarding how Taylor would generally "get angry quick,” "cuss,” and be "short” and "hateful” to the victim when they argued. (R. 266-67.)