WINDOM, Judge.
 

 Ronnie Lee Gholston appeals his convictions for first-degree rape, a violation of § 13A-6-61, Ala.Code 1975; first-degree kidnapping, a violation of § 13A-6-43, Ala. Code 1975; first-degree robbery, a violation of § 13A-8-41, Ala.Code 1975; first-degree ’ theft of property, a violation of § 13A-8-3, Ala.Code 1975; and unauthorized use of a vehicle, a violation of § 13A-8-11, Ala.Code 1975. The circuit court sentenced Gholston to three life sentences
 
 *180
 
 for the rape, kidnapping, and robbery convictions and to 2 terms of 20 years in prison for the theft of property and unauthorized use of a vehicle convictions. (R. 808-09.) Gholston did not file any post-judgment motions.
 

 Because Gholston does not challenge the sufficiency of the evidence, a brief recitation
 
 of
 
 the facts will suffice. A.C., an employee of Advance Cash America, closed the store around six o’clock on the evening of November 29, 2006. (R. 222-23.) As A.C. was getting into her 2003 black Ford Taurus automobile to leave work, Gholston emerged from some bushes and put a gun to her head. (R. 229-31.) Gholston then ordered A.C. to get into the passenger seat, and he got into the driver’s seat. At that point, Gholston drove A.C. to a field. (R. 231, 240.) Once at the field, Gholston forced A.C. at gunpoint to have sexual intercourse with him. (R. 240-48.)
 

 Shortly thereafter, Gholston told A.C. that he was taking her back to Cash Advance America and that he would kill her if she did not give him the money inside the store. (R. 248.) When they returned to the store, A.C. went into the store and got money from a safe. She then returned to the vehicle and gave the money to Ghol-ston. After A.C. gave Gholston the money, he drove away in A.C.’s car with A.C.’s purse and cell phone. (R. 254-56.)
 

 A.C. testified that Gholston caused her to fear for her life and that she was not using drugs during the encounter with Gholston. (R. 239, 257.) She further testified that she had never ■ met Gholston before this incident and that she did not consent to any of Gholston’s demands or actions. (R. 257.) A.C. also identified Gholston from a photographic lineup. (R. 279.)
 

 Terrence Maurice Little testified that he met with Gholston on November 29, 2006, during a drug deal. (R. 400.) Little testified that Gholston was driving a dark-colored Ford Taurus. He further testified that he saw something shiny on the seat next to Gholston that looked like a gun. (R. 399-400; 408.)
 

 Officer Mike Pogue, of the City of Muscle Shoals Police Department, testified that officers recovered A.C.’s vehicle from a driveway that was connected to a residence located off of Hughes Road in Muscle Shoals. (R. 457.) After the officers arrived at the Hughes Road residence where A.C.’s car was parked, Gholston jumped out of a back window of the residence and attempted to flee. (R. 460.) Officer Pogue, however, apprehended Gholston and placed him under arrest. Inside A.C.’s vehicle, officers recovered A.C.’s cell phone and a large amount of United States currency. (R. 466.)
 

 Investigator Scotty Lowery, of the City of Russellville Police Department, testified that after his arrest, Gholston gave a statement. According to Investigator Lowery, Gholston told officers that he had a drug problem and that he had taken A.C.’s vehicle and the money. Investigator Lowery further testified that Gholston “admitted to everything ... except the rape” and except having a gun on the evening of the alleged incident. (R. 522.)
 

 I.
 

 On appeal, Gholston argues that his constitutional rights were violated because the jury venire did not represent a fair cross-section of the population. Specifically, Gholston contends that African-Americans were systematically underrepresented in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
 

 In
 
 Duren v. Missouri,
 
 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579
 
 *181
 
 (1979), the Supreme Court of the United States explained:
 

 “In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a ‘distinctive’ group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.”
 

 The
 
 Duren
 
 Court defined systematic exclusion as exclusion that is “inherent in the particular jury-selection process utilized.”
 
 Id.
 
 at 366;
 
 see also Gibson v. Zant,
 
 705 F.2d 1543, 1549 (11th Cir.1983) (“[T]he
 
 Duren
 
 Court ... defined ‘systematic’ as ‘inherent in the particular jury-selection process utilized.’ ”). “[T]he fair cross-section requirement ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire.”
 
 Gavin v. State,
 
 891 So.2d 907, 945 (Ala.Crim.App.2003) (internal citations and quotations omitted). “Rather than being entitled to a cross-sectional venire, a defendant has a right only to a fair chance, based on a random draw, of having a jury drawn from a representative panel.”
 
 Id.
 
 (internal citations and quotations omitted). This Court has repeatedly held that the random drawing of veniremembers from a list of licensed drivers satisfies the fair-cross-section requirement.
 
 See id.
 
 at 946-47;
 
 Carroll v. State,
 
 852 So.2d 801, 807-08 (Ala.Crim.App.1999);
 
 Clemons v. State,
 
 720 So.2d 961, 972 (Ala.Crim.App.1996);
 
 Sistrunk v. State,
 
 630 So.2d 147, 149-50 (Ala.Crim.App.1993).
 

 During the hearing, Gholston failed to establish that African-Americans are systematically excluded from jury venires in Franklin County. Gholston presented no evidence relating to the system used in Franklin County to generate the list of individuals to be summoned for jury duty. The State, on the other hand, presented evidence that indicated that venire-members are randomly selected by the Administrative Office of Courts from lists of driver’s license holders and voters in Franklin County. (R. 207.)
 

 Because randomly selecting potential jurors for the venire from licensed drivers and registered voters provided Gholston “a fair chance, based on a random draw, of having a jury drawn from a representative panel,” ’ ”
 
 Gavin,
 
 891 So.2d at 945, Gholston failed to meet his burden to establish that African-Americans were systematically excluded from his venire. Accordingly, Gholston is not entitled to relief on this issue. .
 

 II.
 

 Gholston also argues that the trial court erroneously excluded evidence of A.C.’s drug use. Specifically, Gholston contends that the trial court erroneously prevented him from presenting testimony-' from George Craig that Craig had seen A.C. use drugs on two occasions. According to Gholston, Craig’s testimony was admissible to impeach A.C.’s testimony that she does not use drugs. Gholston also asserts that Craig’s testimony was admissible to support Gholston’s defense that he and A.C. were using drugs together on the evening of the incident, that the sex was consensual, and that the, theft of property from the store was A.C.’s idea.
 

 It is well settled that “ ‘[w]hen evi-dentiary rulings of the trial court are reviewed on appeal, “rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion.” ’ ”
 
 Swanstro
 
 m
 
 v. Tele
 
 
 *182
 

 dyne Cont’l Motors, Inc.,
 
 43 So.3d 564, 574 (Ala.2009) (quoting
 
 Bowers v. Wal-Mart Stores, Inc.,
 
 827 So.2d 63, 71 (Ala.2001), quoting in turn
 
 Bama’s Best Party Sales, Inc. v. Tupperware, U.S., Inc.,
 
 723 So.2d 29, 32 (Ala.1998)). This Court will not reverse a circuit court’s “ ‘ruling in either admitting or excluding such evidence in the absence of abuse.’ ”
 
 Cassady v. State,
 
 563 So.2d 53, 54 (Ala.Crim.App.1990) (quoting
 
 Starr v. Starr,
 
 293 Ala. 204, 210, 301 So.2d 78, 83 (1974)). As explained below, Gholston has failed to meet his burden to establish that the circuit court abused its discretion by excluding Craig’s testimony.
 

 First, to the extent Gholston alleges that the circuit court abused its discretion by excluding Craig’s testimony relating to A.C.’s past drug use because his testimony was admissible to impeach A.C.’s testimony that she does not use drugs, this argument is without merit. At trial, A.C. testified that she did not' use drugs on the night of-the incident; She also-testified that she does not use drugs.’ She was not asked whether she had ever used drugs in the past. Because A.C. was not asked whether she had ever used drugs in the past, Craig’s proffered testimony that he had seen A.C. use drugs on two occasions in the past would not have contradicted or impeached A.C.’s testimony. Therefore, Gholston is not entitled to relief on the issue.
 

 Moreover, even if Craig’s testimony relating to A.C.’s drug use would contradict A.C.’s testimony, the circuit court correctly excluded it because the two instances during which A.C. allegedly used drugs occurred well after the incident that formed the basis of the charges for which Gholston was on trial; therefore, Craig’s testimony involved a collateral matter. “ ‘The general rule is that a witness may not be impeached on a collateral matter.’ ”
 
 Ballard v. State,
 
 767 So.2d 1123, 1139 (Ala.Crim.App.1999) (quoting
 
 Brundage v. State,
 
 585 So.2d 238, 240 (Ala.Crim.App.1991), citing in turn 3A
 
 Wigmore on Evidence
 
 § 1003 (Chadbourn rev. 1970) and C. Gamble
 
 McElroy’s Alabama Evidence,
 
 § 156.01(1) (3d ed. 1977)).
 
 See also Ballard v. State,
 
 767 So.2d 1123, 1139 (Ala.Crim.App.1999) (same); 1 Charles W. Gamble and Robert J. Goodwin,
 
 McElroy’s Alabama Evidence
 
 § 156.01(1) (6th ed. 2009) (explaining that a party may attempt to impeach a witness by questioning that witness about an inconsistent collateral matter; however, “the impeaching party must accept the witness’[s] answer concerning the matter — i.e., no extrinsic proof may be offered if the inconsistency concerns a collateral matter”); Rule 606(b), Ala. R. Evid. In a criminal trial, “ ‘[a] fact is “collateral” if it is “admissible neither upon an issue under the pleadings of the case nor for the purpose of impeaching the witness’ credibility in some means other than inconsistency.” ’ ”
 
 Ballard,
 
 767 So.2d at 1139 (quoting
 
 Brundage,
 
 585 So.2d at 240, quoting in turn
 
 McElroy’s,
 
 § 156.01(3)). The test for determining whether a fact is collateral is as follows: “ ‘ “Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?” ’ ”
 
 Ballard,
 
 767 So.2d at 1139 (quoting
 
 Brundage,
 
 585 So.2d at 240, quoting in turn 3A
 
 Wigmore
 
 § 1003).
 

 At trial, Craig, in a proffer, testified that he did not know A.C. in November 2006 when the incident that forms the basis of this appeal occurred. Craig further testified that he first met A.C.' during the summer of 2007. According to Craig, during the summer of 2007, he witnessed A.C. use drugs on two occasions. Gholston argued that Craig’s testimony was admissible to impeach AC.’s testimony that she does not use drugs. The fact that A.C.
 
 *183
 
 may have used drugs at some point after Gholston’s crime was irrelevant to the issues being tried and could not have been presented “ ‘ “for any purpose independently of ... contradicti[ng]” ’ ” A.C.’s testimony that she does not use drugs.
 
 Ballard,
 
 767 So.2d at 1139 (quoting
 
 Brundage,
 
 585 So.2d at 240, quoting in turn 3A
 
 Wigmore
 
 § 1003). Consequently, whether A.C. used drugs at some point after November 2006, when the crime occurred, was a collateral matter. Because Craig’s proffered testimony constituted extrinsic evidence that would have had no relevance except to impeach A.C. on a collateral matter, the circuit court’s ruling excluding it did not constitute an abuse of discretion.
 

 To the extent Gholston argues that Craig’s testimony that he saw A.C. use drugs on two occasions would be admissible to show that A.C. used drugs with Gholston on the night of the incident, his argument is likewise without merit. According to Craig’s proffer, he did not meet A.C. or see her use drugs until many months after the crime occurred. Further, Gholston failed to proffer any evidence that would connect A.C.’s alleged drug use after the crime with alleged drug use during the crime. Because Craig did not know A.C. around the time of the crime and did not see A.C. use drugs until well after the crime occurred, the circuit court correctly determined that Craig’s testimony related to an act that was too remote to the incident and irrelevant to Gholston’s guilt.
 
 See Bedsole v. State,
 
 974 So.2d 1034, 1040 (Ala.Crim.App.2006) (holding that “the determination of whether a prior bad act is too remote is made on a case-by-case basis and is left to the sound discretion of the trial judge, and the judge’s determination will not be disturbed on appeal unless the judge has abused his discretion”). ■
 

 Moreover, Craig’s testimony relating to A.C.’s alleged drug use and her character was inadmissible because it involved specific instances of misconduct. Evidence of a victim’s character is admissible in some instances pursuant to Rule 404(a)(2)(A), Ala. R. Evid.; however, specific instances of misconduct are not admissible to establish the victim’s character unless the character trait is an “essential element of a charge, claim, or defense.” Rule 405(a) and (b), Ala. R. Evid.
 
 See Harrington v. State,
 
 858 So.2d 278, 293 (Ala.Crim.App.2002). Because Gholston sought to establish AC.’s character trait through evidence relating to specific instances of misconduct, the circuit court correctly excluded Craig’s testimony relating to A.C.’s alleged drug use.
 
 Id.; cf.
 
 Rule 404(b), Ala. R. Evid., (“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.”). Therefore, Gholston is not entitled to relief oh this issue.
 

 III.
 

 Finally, this Court ordered the parties to address whether Gholston’s convictions for theft and robbery violate the Fifth Amendment to the Constitution of the United States. In his supplemental brief, Gholston argues that his convictions for theft of property and robbery violate the Double Jeopardy Clause of the Fifth Amendment because, under the facts of this case, theft is a lesser-included offense of robbery. This Court agrees.
 
 [1]
 
 '
 

 
 *184
 
 The Supreme Court of the United States has held that the Double Jeopardy Clause of the Fifth Amendment contains three protections: “It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.”
 
 North Carolina v. Pearce,
 
 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted), overruled on other grounds,
 
 Alabama v. Smith,
 
 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).
 
 See Schiro v. Farley,
 
 510 U.S. 222, 229, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)(reaffirming the three protections of the Double Jeopardy Clause). “These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense.” Schiro, 510 U.S. at 229 (citing
 
 United States v. Wilson,
 
 420 U.S. 332, 339, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975)). The Alabama Supreme Court has held that the Double Jeopardy Clause of Art. I § 9, of the Alabama Constitution of 1901, applies to protect only those three areas enumerated in
 
 Pearce. See Ex parte Wright,
 
 477 So.2d 492, 493 (Ala.1985);
 
 Adams v. State,
 
 955 So.2d 1037, 1098 (Ala.Crim.App.2003), reversed on other grounds,
 
 Ex parte Adams,
 
 955 So.2d 1106 (Ala.2005) (holding that Adams, who was 17 years old at the time of the offense, is not eligible for a sentence of death).
 

 In
 
 Blockburger v. United States,
 
 the Supreme Court of the United States enumerated the “same elements” test for determining whether two charges constitute the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the
 
 Blockburger
 
 test, “where the
 
 same act or transaction
 
 constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.”
 
 Id.
 
 (emphasis added). The United States Supreme Court has also held “that a lesser included and a greater offense are the same under
 
 Blockburger....” Brown v. Ohio,
 
 432 U.S. 161, 166 n. 6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).
 
 See also Perkinson v. State,
 
 273 Ga. 491, 494, 542 S.E.2d 92, 95 (2001) (“For double jeopardy purposes, a lesser-included and a greater offense are the ‘same offense’ under the Fifth Amendment because the lesser offense requires no proof beyond that which is required for the conviction of the greater offense.”).
 

 The indictment against Gholston alleged, in pertinent part, the following:
 

 “Count 3: Theft of Property in the First-Degree
 

 “The Grand Jury of Franklin County charges, before the finding of this indictment, Ronnie Lee Gholston, whose name is otherwise unknown to the Grand Jury than as stated, did knowingly obtain or exert unauthorized control over, to-wit: a 2003 Ford Taurus, the property of [A.C.], with intent to deprive the owner of said property, in violation of § 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama.
 

 “Count 4: Robbery in the First Degree
 

 “The Grand Jury of Franklin County charges, before the finding of this indictment, Ronnie Lee Gholston, whose name is otherwise unknown to the Grand Jury than as stated, did, in the course of committing a theft of property, to-wit: Lawful United
 
 *185
 
 States Currency and/or a 2003 Ford Taurus, the property of Advance Cash America and/or [A.C.], with the intent to overcome her physical resistance or physical power of resistance or to compel acquiescence to the taking of or escaping with the property, while the said Ronnie Lee Gholston represented himself to be armed with a deadly weapon or dangerous instrument, to-wit: a pistol, in violation of § 13A-8-41 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
 

 (C.R. 12-13.)
 

 Further, § 13A-8-41(a)(l), Ala.Code 1975, provides that “[a] person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he ... [i]s armed with a deadly weapon or dangerous instrument.” Section 13A-8-43, Ala.Code 1975, provides as follows:
 

 “(a) A person commits the crime of robbery in the third degree if in the course of committing
 
 a theft
 
 he:
 

 “(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
 

 “(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
 

 (Emphasis added.) Section 13A-8-3, Ala. Code 1975, defines first-degree theft as including the following:
 

 “(a) The theft of property which exceeds two thousand five hundred dollars ($2,500) in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.
 

 “(b) The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree.... ” •
 

 Gholston was charged with first-degree theft for stealing A.C.’s 2003 Ford Taurus automobile. Gholston was also charged with first-degree robbery for threatening the use of force while armed with a deadly weapon while committing a theft of “Lawful United States Currency and/or
 
 a 2003 Ford Taunts ”
 
 (C.R. 13) (emphasis added). The circuit court instructed the jury that it could find Gholston guilty of first-degree robbery based on the underlying theft of A.C.’s 2003 Ford Taurus. (R. 776.) Therefore, the jury could have found Ghol-ston guilty of first-degree theft and first-degree robbery based on the unlawful taking of the same property, i.e., a 2003 Ford Taurus.
 

 Accordingly, “[biased on the statutory elements of the crimes and the facts alleged in the indictments, it is clear that the theft forming the basis for the theft [conviction could have been] the same theft underlying the robbery [conviction].”
 
 Crayton v. State,
 
 949 So.2d 976, 978 (Ala.Crim.App.2006);
 
 see also Deardorff v. State,
 
 6 So.3d 1205, 1215 (Ala.Crim.App. 2004) (holding that first-degree theft of property was a lesser-included offense of robbery; therefore, Deardorffs convictions for first-degree theft of property and murder made capital because it was committed during the course of a robbery violated double-jeopardy principles). Consequently, the first-degree theft of property offense, as alleged in the indictment, was a lesser-included offense of the first-degree robbery offense, and Gholston’s convictions for both crimes violate the Double Jeopardy Clause of the Fifth Amendment.
 
 See
 
 § 13A-1-9(a)(1), Ala.Code 1975 (defining a lesser-included offense as an offense that is “established by proof of the same or fewer than all the facts required to establish the commission of the offense
 
 *186
 
 charged”);
 
 Lewis v. State,
 
 57 So.3d 807, 818 (Ala.Crim.App.2009) (holding that the Double Jeopardy Clause of the Fifth Amendment bars convictions for both a greater offense and a lesser-included offense);
 
 Heard v. State,
 
 999 So.2d 992, 1006 (Ala.2007) (holding that “simultaneous convictions [for] greater and lesser-included offenses” constitute a jurisdictional double-jeopardy violation).
 

 For the foregoing reasons, this Court affirms Gholston’s convictions and sentences for first-degree rape, first-degree kidnapping, first-degree robbery, and unauthorized use of a vehicle. However, this Court remands this cause to the circuit court with directions for the circuit court to vacate Gholston’s conviction and sentence for first-degree theft of property. Due return should be filed in this Court within 42 days from the date of this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
 

 WISE, P.J., and WELCH, KELLUM, and MAIN, JJ., concur.
 

 [1]
 

 . This Court notes that the unauthorized use of a vehicle is not a lesser-included offense of theft or robbery.
 
 See Holman v. State,
 
 495 So.2d 115, 119 (Ala.Crim.App.1986);
 
 see also Crowder v. State,
 
 476 So.2d 1241, 1243 (Ala.Crim.App.1985). Therefore, Gholston's conviction for first-degree unauthorized use of a
 
 *184
 
 vehicle does not violate the Double Jeopardy Clause.