Rel: May 5, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

―――――――――――――――

### CR-21-0291

―――――――――――――――

### Curtis Lee Johnson

### v.

### State of Alabama

### Appeal from Cherokee Circuit Court
### (CC-20-900036)

MINOR, Judge.

Curtis Lee Johnson appeals his convictions for two counts of first-degree sodomy, see § 13A-6-63, Ala. Code 1975, and two counts of sexual

abuse of a child under the age of 12, see § 13A-6-69.1, Ala. Code 1975.[1] On appeal, Johnson raises five issues arguing: (1) that the circuit court erred by granting the State's motion in limine to exclude evidence that S.T. was the victim of a prior sexual assault; (2) that the circuit court erred by denying his motion in limine to exclude S.T.'s videotaped interview; (3) that the jury pool was not made up of a fair cross-section of the community because, he says, "the COVID pandemic resulted in the systematic exclusion of all African-Americans from the jury panel"; (4) that his substantial rights were violated when he received verdicts that were not unanimous; and (5) that the State's evidence did not support his convictions for sexual abuse of a child under 12. (Johnson's brief, p. 20.) For the reasons below, we affirm the circuit court's judgment. But we must remand this case to the circuit court for that court to impose post-release supervision mandated by § 13A-5-6(c), Ala. Code 1975.

---

[1]The circuit court sentenced Johnson to 99 years' imprisonment on each of the sodomy convictions and to 20 years' imprisonment on each of the sexual-abuse convictions. The court ordered that those sentences were to be served consecutively.

FACTS

Six-year-old S.T., who was eight years old at the time of trial, testified to incidents of sexual abuse involving her mother's boyfriend, "Mr. Curtis," or Johnson. (R. 133.) One time, S.T. and Johnson were at the "burn pile" outside Johnson's house when Johnson told S.T. to "suck his penis." (R. 134.) On another occasion, Johnson told S.T. to get in the shower with him and to do the "same thing," which referred to the prior oral sex. (R. 135.) S.T. testified that on both occasions Johnson stated that "this is what boys will do to you" or that "boys will do this to you." (R. 134-35.)

S.T. recalled another incident in which her mother, C.T., walked into the bathroom and saw Johnson touching her "pocketbook."[2] (R. 135.) S.T. asked, "Did you see that?" and C.T. walked outside and "got her gun." (R. 136.) S.T. covered her ears because she was scared that C.T. was going to "kill [Johnson]." (R. 136.) Johnson walked out of the bathroom and stated, "I just touched her belly" to which S.T. responded, "No, you did

---

[2]"Pocketbook" refers to S.T.'s vagina.

not." (R. 136.) S.T. also stated that Johnson touched her "boobies." (State's Exhibit 8, minute 8:12.[3])

In the summer of 2019, C.T. allowed her then-boyfriend Johnson to watch her daughter S.T. while she worked as a nurse near Centre. C.T. testified that on July 23, 2019, she saw Johnson "grope [S.T.] in her private area." (R. 150.) C.T. testified that she "lost it" and yelled, "What the fuck did I just see?" (R. 151.) C.T. testified that S.T. stated, "Mom, did you see that? … He touched me down in my pocketbook." (R. 151.) C.T. testified that she went to her car to get her gun but that "Johnson went flying past [C.T.]" so she said, "[S.T.], let's just get our stuff and go." (R. 152.) C.T. testified that before she and S.T. could leave the house, Johnson came back to the house and told C.T. to "just let it go" because, he said, "we were horseplaying; I took it too far." (R. 153.) C.T. testified that she threatened to call Johnson's church and report the incident to the pastor and that Johnson responded, "Don't call the pastor. They're going to kick me off the deacon board." (R. 153.) C.T. also testified that

---

[3]Nancy Green, Forensic Interviewer at the Talladega County Child Advocacy Center ("CAC"), testified that she interviewed S.T. days after the incident. The circuit court admitted a recording of the interview. See State's Exhibit 8.

Johnson stated, "Can I pay you? Whatever it is. Just don't call and tell nobody." (R. 154.)[4]

Johnson, who was 68 years old at the time of trial, testified in his own defense. Testifying about the bathroom incident, Johnson explained that he pulled S.T.'s shirt so that he could reach for the pliers that S.T. held in her hands, and he denied touching her vagina.

A jury convicted Johnson of two counts of first-degree sodomy and two counts of sexual abuse of a child under the age of 12. Johnson timely appealed.

## I. STATE'S MOTION IN LIMINE

Johnson argues that the circuit court abused its discretion by preventing him from questioning S.T. about a prior sexual assault by another individual. (Johnson's brief, pp. 26-33.) This issue is not properly before this Court for review.

Before trial, the State moved in limine to prohibit Johnson's use of any evidence related to a prior instance of sexual abuse suffered by S.T.

---

[4]T.T., C.T.'s sister, testified that on July 23, she received a call from C.T. about S.T. being abused by Curtis. T.T. telephoned and confronted Curtis. The circuit court admitted a recording of the telephone conversation. See State's Exhibit 7.

The State argued that the evidence was prohibited by Rule 412, Ala. R. Evid.[5]  Johnson responded in a motion of his own that the evidence was essential to explain S.T.'s knowledge of sexual acts and her age-inappropriate language.  The circuit court granted the State's motion.

Johnson explicitly argues in his brief that he is challenging the circuit court's granting of the State's motion in limine, yet the court's ruling preserved nothing for appeal.  See Harrington v. State, 858 So. 2d

---

[5]Rule 412, Ala. R. Evid., provides:

"(a) Evidence Generally Inadmissible. The following evidence is not admissible in any prosecution for criminal sexual conduct except as provided in sections (b) and (c):

"(1) evidence offered to prove that any complaining witness engaged in other sexual behavior.

"....

"(b) Exceptions. The following evidence is admissible, if otherwise admissible under these rules:

"....

"(3) evidence the exclusion of which would violate the constitutional rights of the defendant."

A "complaining witness" is defined as "[a]ny person alleged to be the victim of the crime charged, the prosecution of which is subject to the provisions of this rule." Rule 412(d)(1), Ala. R. Evid.

278, 291-92 (Ala. Crim. App. 2002) (recognizing that it is generally held that the granting of a motion in limine can never be reversible error). To preserve this issue for appeal, it was incumbent upon Johnson to make an offer of proof during trial. Id. at 291. "It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error." Id. (emphasis omitted).

The circuit court, under Rule 412, Ala. R. Evid., was tasked with balancing the privacy interests of S.T. with Johnson's right to present a defense. Johnson asserted below, as he does on appeal, that the evidence was essential to explain S.T.'s knowledge of sexual acts and her age-inappropriate language. All that was before the circuit court when it ruled on the State's motion, however, was that S.T. "was molested by an 11-year-old in Talladega County" the year before Johnson's abuse. (R. 18.)

> "'The primary reason for the offer of proof is that it better enables the trial judge to consider further the claim for admissibility of such evidence. The secondary reason is that the offer of the proposed [evidence] places the same in the official record for the benefit of the appellate court called upon to decide whether there has been error committed in the ruling.'"

7

Ex parte Harris, 461 So. 2d 1332, 1334 (Ala. 1984) (quoting Charles W. Gamble, McElroy's Alabama Evidence § 425.01(1) (3d ed. 1977)). The allegations against Johnson were that S.T. performed oral sex on him and that he touched S.T.'s "pocketbook" and her "boobies." Given the dearth of information before the circuit court, it would have been impossible for it to assess whether the prior instance of sexual abuse would have been relevant to explaining S.T.'s knowledge of sexual acts or her purportedly age-inappropriate language.[6] The absence of an offer of proof similarly prevents this Court from assessing whether the circuit court abused its discretion in granting the State's motion to prohibit the evidence.

Because Johnson failed to make an offer of proof regarding the prior sexual abuse suffered by S.T., he has failed to preserve this issue for appellate review. See Harrington, 858 So. 2d at 292. Johnson is due no relief on this claim. See Ex parte Coulliette, 857 So. 2d 793, 794 (Ala. 2003) ("'Review on appeal is restricted to questions and issues properly and timely raised at trial.' Newsome v. State, 570 So. 2d 703, 717 (Ala.

---

[6]Johnson did not identify for the circuit court the specific knowledge or the language that he believed was age-inappropriate.

Crim. App. 1989).").

## II. JOHNSON'S MOTION IN LIMINE

Johnson argues the circuit court violated his Sixth Amendment[7] right to confront his accuser when it allowed S.T.'s videotaped interview. (Johnson's brief, pp. 40-42.)

As best we can determine, Johnson objected to the videotaped interview on the mistaken belief that S.T. was not going to testify. (R. 25.) After the State confirmed that S.T. would testify, the circuit court asked Johnson "[d]oes that speak correctly?" to which Johnson replied, "Yes, Your Honor. I mean, we would like to exclude the video. I think the law allows it in, but I'm making that objection for constitutional grounds there, and we'll stand on that." (R. 25.) Later, when the State moved to admit the videotaped interview as State's Exhibit 8, Johnson again objected: "Judge, I'd just renew my objection that I made prior to trial, which was that they had given notice, and I have objected to the notice of

---

[7]The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

intent to use it." (R. 194.) The circuit court overruled the objection and allowed State's Exhibit 8 to be played. (R. 194.)

Johnson's objection based on his mistaken belief that S.T. was not going to testify is moot. Any argument that Johnson now raises regarding the video's admissibility considering the circuit court's "Rape Shield ruling," was not raised below. "Review on appeal is restricted to questions and issues properly and timely raised at trial." Newsome v. State, 570 So. 2d 703, 717 (Ala. Crim. App. 1989). Thus, Johnson is due no relief on this issue.

## III. JURY POOL

On appeal, Johnson argues that the jury pool was not made up of a fair cross-section of the community because, he says, "the COVID pandemic resulted in the systematic exclusion of all African-Americans from the jury panel," thereby depriving him of his constitutional rights. (Johnson's brief, pp. 42-49.)

> "'In Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court of the United States explained:
>
>> "'"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be

excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

"'The <u>Duren</u> Court defined systematic exclusion as exclusion that is "inherent in the particular jury-selection process utilized." <u>Id.</u> at 366; <u>see also</u> <u>Gibson v. Zant</u>, 705 F.2d 1543, 1549 (11th Cir. 1983) ( "[T]he <u>Duren</u> Court ... defined 'systematic' as 'inherent in the particular jury-selection process utilized.'"). "[T]he fair cross-section requirement ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire." <u>Gavin v. State</u>, 891 So. 2d 907, 945 (Ala. Crim. App. 2003) (internal citations and quotations omitted). "Rather than being entitled to a cross-sectional venire, a defendant has a right only to a fair chance, based on a random draw, of having a jury drawn from a representative panel." <u>Id.</u> (internal citations and quotations omitted). This Court has repeatedly held that the random drawing of veniremembers from a list of licensed drivers satisfies the fair-cross-section requirement. <u>See</u> <u>id.</u> at 946–47; <u>Carroll v. State</u>, 852 So. 2d 801, 807–08 (Ala. Crim. App. 1999); <u>Clemons v. State</u>, 720 So. 2d 961, 972 (Ala. Crim. App. 1996); <u>Sistrunk v. State</u>, 630 So. 2d 147, 149–50 (Ala. Crim. App. 1993).'

"<u>Gholston v. State</u>, 57 So. 3d 178, 180–81 (Ala. Crim. App. 2010)."

<u>Jackson v. State</u>, 177 So. 3d 911, 917-18 (Ala. Crim. App. 2014).

During jury selection, Johnson stated that the afternoon jury panel had more Black persons on it and requested that that panel be looked at to "have a more accurate jury pool of [Johnson's] peers." (R. 88-89.) The circuit court responded that there could have been the same number of Black persons on the morning panel. The circuit court denied the request. (R. 90-91.)

At a hearing on Johnson's motion for a new trial, the State recalled:

"[A]n objection was raised to the constitution of the panel, and a discussion was held on the record then during the trial that the panel was randomly selected based upon the driver's licenses of the citizens of Cherokee County, and that method of constituting jury panels has been litigated time and again and held to be constitutional."

(R. 355.) Later, the circuit court addressed the issue:

"THE COURT: Let me go back to Paragraph 11 on the Motion for Judgment of Acquittal, the first thing you argued, that the defendant was denied his Sixth Amendment right based on the makeup of the jury panel.

"Here's my recollection of what happened is that, because of COVID, we called juries in two different panels, randomly selected. One at 9:00 o'clock. One at 1:30. And the 9:00 o'clock panel had enough folks on it for us to go forward and select a jury. We had other cases for trial that week, and so we needed to get it started, and so we did.

12

"You all raised an objection that there were no African-Americans in the panel at 9:00 o'clock, and I asked then, 'Are there African-Americans in the panel at 1:30?' And I don't remember that you all said yes or that you even knew.

"As it turns out—and I think it's important for the record to contain this—that afternoon when the 1:30 panel came in here, there was one. There was one African-American in the 1:30 panel. There weren't any at the 9:00 o'clock panel. And I think it's important, also, to note for appellate review that both the defendant and the victim and the victim's family in this case are all African-Americans. So this is not an instance in which the victim and the defendant were of two different races.

"And then, also, I will ask the same question about Paragraph 11 that I've asked you about these others. You made allegations here, but what does the law say about this? What cases can you cite to me that would support your position?

"[Johnson's counsel]: Yes, Your Honor. We're specifically arguing—specifically, the Sixth Amendment itself, just the right to a fair and impartial trial. I'm not really going under Batson [v. Kentucky, 476 U.S. 79 (1986),] here in that the prosecution struck him. More specifically, that there was nobody there. And I get there was only one that afternoon.

"And, also, some statistics, I think there's, you know, maybe five percent African-Americans in our county. But we just felt like it was not a fair cross-section of his peers and that we were only allowed those 24 on that panel."

(R. 360-62.)

In denying Johnson's motion for a new trial on this issue, the circuit court held:

"[Johnson] made a variety of unsupported allegations in his motion that the Court deems too frivolous to address specifically, with the exception of the claim that in the jury panel he selected from 'there were no African-Americans on the entire panel from which strikes were made. That a panel that arrived later in the trial week for other trials had African-Americans on it.' The use of the plural 'African-Americans' is inaccurate. As the Court noted at the hearing on the motion, when the afternoon panel of jurors arrived, there was one African-American that appeared for jury service.

"At the time of jury selection, [Johnson] raised the lack of African-Americans on the panel as an issue. The Court gave him an opportunity to explain how the afternoon panel might be better. However, [Johnson] offered no explanation as to the makeup (or potential makeup) of the afternoon panel. His request to use the afternoon panel was, therefore, speculative as he had no information to provide the Court as to the racial makeup of the afternoon panel.

"Further, [Johnson] has not presented the Court with any information as to the racial makeup of the jurors summoned for jury service. It could make a difference if the panel of jurors summoned (by the Administrative Office of Courts in Montgomery) contained no or only very few African-Americans. However, no such information was provided by [Johnson].

"Further, [Johnson] has not supported his argument with adequate citation to and explanation of legal authority. Merely citing cases and constitutional amendments without adequate legal analysis is insufficient.

"Finally, as the Court noted at the motion hearing, [Johnson] and the victim and the victim's family are all African-Americans. This is not a case in which there is a racial difference between the defendant and the victim."

14

(C. 58-59.)

We agree with the circuit court's holding that Johnson did not prove a prima facie violation of the fair-cross-section requirement under <u>Duren v. Missouri</u>, 439 U.S. 357 (1979). Thus, Johnson is due no relief on this issue.

## IV. UNANIMOUS VERDICTS

Johnson argues that his substantial rights were violated when he received verdicts that, he says, were not unanimous. Johnson argues that an unanimity charge should have been given because, he says, the jury could not determine which acts constituted each charge of sexual abuse of a child under 12.

The record shows that the circuit court instructed the jury: "The defendant is charged with two counts of sexual abuse of a child less than 12 years old. …You must consider each of the two counts independently of one other." (R. 320-21.) Following the circuit court's jury charge, Johnson's counsel said that he had: "No objection, Your Honor." (R. 331.)

> "Generally, Alabama follows a strict-election rule, by which the State must elect the offense on which it will proceed '[w]here the evidence discloses two or more offenses growing out of distinct and separate transactions.' <u>R.L.G. v. State</u>, 712 So. 2d 348, 355 (Ala. Crim. App. 1997), aff'd, 712 So. 2d 372

15

(Ala. 1998) (internal quotation marks omitted). However, the strict-election rule does not apply in cases of sexual abuse of children by a resident abuser that involve purely generic evidence, i.e., 'evidence of sexual abuse perpetrated upon a young child so often and in so many locations "by an abuser residing with the child ... that the young child loses any frame of reference in which to compartmentalize the abuse into 'distinct and separate transactions,'"' or that involve a combination of both specific and generic evidence. Shouldis v. State, 38 So. 3d 753, 761 n.4 (Ala. Crim. App. 2008) (quoting R.L.G., 712 So. 2d at 356). In those cases, the either/or rule applies: 'The "either-or" rule provides that the prosecution must elect which single act it is relying [on] for a conviction or else the trial judge must give a specific unanimity instruction.' R.A.S. v. State, 718 So.2d 117, 119 (Ala. 1998).

> "'[T]he "either/or" rule ... as that rule is modified for generic evidence [provides that] where the evidence of more than one incident of sexual molestation to a child victim by a resident child molester is purely generic and where "there is no reasonable likelihood of juror disagreement as to particular acts, and the only question [for the jury] is whether or not the defendant in fact committed all of [the incidents]," the trial court should instruct the jury that it can find the defendant guilty only if it unanimously agrees that he committed all the incidents described by the victim.'

"R.L.G., 712 So. 2d at 367 (emphasis omitted). Moreover:

> "'In cases … that involve both generic and specific evidence, where evidence of multiple culpable acts is adduced to prove a single charged offense, jury unanimity must be protected. Therefore, in such a case, the defendant is entitled either to have the State elect the single act upon which it is relying

16

for a conviction or to have the court give a specific unanimity instruction. If the State chooses not to elect the specific act, the trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, thereby assuring a unanimous verdict on one criminal act.'

"R.A.S., 718 So. 2d at 122 (footnote omitted)."

State v. Kerley, 260 So. 3d 891, 898-99 (Ala. Crim. App. 2017).

Here, because Johnson stated that he was satisfied with the circuit court's instructions, any challenge to those instructions is not preserved.[8] See, e.g., Shouldis v. State, 953 So. 2d 1275, 1282 (Ala. Crim. App. 2006). Thus, Johnson is due no relief on this issue.

## V. SUFFICIENCY OF THE EVIDENCE

On appeal, Johnson argues that the State's evidence could not support his convictions for sexual abuse of a child under 12.[9] Johnson

___

[8]Defense counsel's argument that he ran into a juror who said that Johnson had not produced enough evidence that he was not guilty was not evidence that the circuit court's unanimity instruction was not sufficient. See Johnson's Motion for a New Trial Hearing, R. 358-59. See Ex parte Alabama Dep't of Mental Health & Mental Retardation, 937 So. 2d 1018, 1026 (Ala. 2006) ("Argument of counsel is not evidence.").

[9]Johnson does not challenge the sufficiency of the evidence supporting his sodomy convictions. Thus, those convictions are affirmed.

argues that the State failed to prove which of Johnson's acts constituted the "sexual contact" as defined in § 13A-6-60(3), Ala. Code 1975.

Section 13A-6-60(3), Ala. Code 1975, defines "sexual contact" as "[a]ny touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party. The term does not require skin to skin contact." "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997) (quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App.1992)). "'"'[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.'"'" Zumbado v. State, 615 So. 2d 1223, 1241 (Ala. Crim. App. 1993) (quoting Johnson v. Sate, 555 So. 2d 818, 820 (Ala. Crim. App. 1989), quoting other cases). And circumstantial evidence can support a conviction, and that question is for the jury. See White v. State, 546 So. 2d 1014, 1017 (Ala. Crim. App. 1989).

The State presented sufficient evidence of sexual contact within the meaning of § 13A-6-60(3), Ala. Code 1975, when it showed multiple acts

of sexual abuse, including Johnson's touching six-year-old S.T.'s "pocketbook," or vagina, and "boobies." Thus, based on the record before us, we hold that there was sufficient legal evidence from which the jury could reasonably have found Johnson guilty of two counts of sexual abuse of a child under the age of 12. Johnson is due no relief on this issue.

## VI. POST-RELEASE SUPERVISION UNDER § 13A-5-6(c)

Finally, although the circuit court's imposition of 99-year sentences on Johnson's convictions for first-degree sodomy was authorized, because those convictions are for Class A felony sex offenses involving a child, the circuit court also must impose on each conviction "an additional penalty of not less than 10 years of post-release supervision to be served upon the defendant's release from incarceration." § 13A-5-6(c), Ala. Code 1975. That subsection provides:

> "In addition to any penalties heretofore or hereafter provided by law, in all cases where an offender is designated as a sexually violent predator pursuant to Section 15-20A-19, or where an offender is convicted of a Class A felony sex offense involving a child as defined in Section 15-20A-4,[10] and is sentenced to a county jail or the Alabama Department of Corrections, the sentencing judge shall impose an additional

---

[10]"Sex offense involving a child" is defined as "[a] conviction for any sex offense in which the victim was a child or any offense involving child pornography." § 15-20A-4(27), Ala. Code 1975.

19

> penalty of not less than 10 years of post-release supervision to be served upon the defendant's release from incarceration."

See also Bishop v. State, 344 So. 3d 906, 915 (Ala. Crim. App. 2021). Thus, we must remand this case for the circuit court to impose the required periods of post-release supervision on Johnson's convictions for first-degree sodomy.

## CONCLUSION

We affirm Johnson's convictions for two counts of first-degree sodomy and two counts of sexual abuse of a child under the age of 12, and we affirm his sentences for the sexual-abuse convictions. As to Johnson's sentences for first-degree sodomy, a Class A felony offense, we remand this cause to the circuit court for it to conduct a new sentencing hearing at which Johnson, represented by counsel, will be sentenced in accordance with this opinion. Due return must be filed with this Court no later than 56 days from the date of this opinion. The return to remand must include a transcript of the proceedings conducted on remand and a new sentencing order.

AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

Windom, P.J., and McCool and Cole, JJ., concur. Kellum, J., concurs in the result.